STATE of Wisconsin, Plaintiff-Respondent,

v.

Gordon R. ANDERSON, Jr., Defendant-Appellant.†

Court of Appeals

*No. 98–3639–CR. Submitted on briefs June 4, 1999.—Decided August 19, 1999.*

(Also reported in 600 N.W.2d 913.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Craig M. Kuhary* of *Huppertz & Kuhary, S.C.* of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David J. Becker*, assistant attorney general.

Before Dykman, P.J., Eich and Vergeront, JJ.

VERGERONT, J. Gordon Anderson, Jr. appeals a judgment of conviction for first-degree intentional homicide as a party to the crime, contrary to

§§ 940.01(1) and 939.05, STATS.[1] He contends the trial court made two evidentiary errors: it admitted evidence of a "prior bad act," and it refused to admit additional portions of his prior out-of-court statement under the doctrine of completeness. We conclude the trial court did not erroneously exercise its discretion in admitting the prior bad acts evidence under § 904.04(2), STATS., but it did err in refusing to admit an additional portion of the defendant's statement. However, we conclude this error was harmless and therefore affirm.

## BACKGROUND

The charges arose out of the death of Brenda Boshears-McDonald (Boshears), whose body was found floating in a drainage ditch under a bridge in Wisconsin. The pathologist who conducted the autopsy stated that Boshears' death was caused by someone pounding on her head, presumably with a blunt object. The pathologist further testified that, although the head injuries were sufficient to kill her, they were possibly augmented by drowning and force to the neck. One week before the body was found, Anderson and a friend, Jamie Moore, met Boshears at a bar in Rock-

---

[1] Section 939.05, STATS., provides, in pertinent part:

**Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although the person did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

(2) A person is concerned in the commission of the crime if the person:

(a) Directly commits the crime; or

(b) Intentionally aids and abets the commission of it. . . .

ford, Illinois, and the three of them left together to purchase cocaine.

During Anderson's trial, the jury heard two very different versions of Boshears' murder. The first was related by Moore, who testified for the State as follows. After work on May 1, 1997, Anderson drove Moore to the bar where they first saw Boshears, who appeared intoxicated. Eventually the three left the bar, with Anderson driving, and went to a house where Anderson gave Boshears $50 to buy crack cocaine. When she got back into the truck,[2] they drove out of town, and Anderson and Boshears began arguing about where to stop to smoke the cocaine. Finally, Anderson demanded that Boshears either show him the drugs or give him his money back, threatening Boshears with a knife. He stopped the truck on a bridge in the country, got out and began yelling at Boshears to get out. When Moore opened the passenger door to let her out, Boshears turned to Moore, cussed at him, and pushed him as she tried to get out. Moore punched Boshears in the jaw, causing her mouth and his hand to bleed. He then grabbed her and threw her to the ground, and also fell to the ground himself. At that point, Anderson came around the truck and hit Boshears in the head with a hammer and then threw her off the bridge into the water.

Anderson and Moore got back in the truck, turned the truck around and saw Boshears coming up the side of the ditch. According to Moore, Anderson made the following comments: "she's not gonna die," "he (Anderson) was not gonna go back to jail for some bitch," and "a dead bitch can't say anything." Anderson then got out and started hitting Boshears in the head with the

---

[2] Anderson was driving his nephew's truck.

hammer again and then threw her off the bridge again. When Anderson and Moore saw Boshears struggling to get out of the water again, Anderson went to the truck, got a rope and put it around Boshears neck. He pulled on it until the rope broke and she fell into the water and stopped moving. On their drive back to Rockford, Anderson stopped at another bridge and threw the hammer and the rope into a river.

Moore acknowledged that his testimony of this version of events followed a plea agreement, pursuant to which the charge against him was reduced to second-degree reckless homicide. He also acknowledged that, prior to his testimony at Anderson's trial, he had lied about the events of May 1 several times, including initially telling investigators he was not there; he had "told at least seven different versions of what happened on [that] night"; and he had not told anyone he hit Boshears until the week before trial, after he was sentenced on the reduced charge.

Although Anderson did not testify, he established his version of events through other witnesses. Anderson's nephew and two detectives testified that Anderson had told them what had happened that night, and from their testimony the jury could infer that Anderson consistently said Moore was the one who killed Boshears. Several police officers and both Anderson's and Moore's girlfriends testified that Moore had previously told them different versions of the facts at different points in the investigation. Finally, three inmates testified that Moore had, while in jail, told each of them that he (Moore) killed the woman with a hammer, although two of the inmates acknowledged that Moore also told different stories that put some blame on Anderson.

## ANALYSIS

*Other Acts Evidence*

In addition to Moore's testimony, Tina Smith, who had been sexually assaulted by Anderson in 1994, testified for the State. Anderson objected to this other acts evidence and, in the alternative, asked the court to limit Smith's testimony to these elements: she made an allegation against Anderson, she testified against him and he was subsequently sentenced to prison. The trial court ruled that the evidence was admissible under § 904.04(2), STATS., for the purposes of motive and intent[3] with the following explanation:[4]

> [I]n view of the testimony of Mr. Moore, that they had driven away. That they turned around and came back. That the woman was alive and crawling on the bridge. And that Mr. Anderson as he turned around approximately made the statement that a dead bitch can't say anything, would, if believed by the jury, [make] this prior offense . . . relevant as to why he made such a statement. Both on the grounds of motive and intent.

The court also concluded the probative value outweighed any prejudicial effect, provided there were appropriate limiting instructions. It further ruled that Smith's testimony must be limited to the following details:

---

[3] The trial court rejected the State's argument that the other acts evidence was admissible for the purpose of identity, and the State does not argue that on appeal.

[4] The other acts evidence was first presented at a hearing on a motion in limine. When asked to reconsider its decision during the trial, the court expounded on its decision to allow the evidence and made the statements quoted above.

[S]he met the defendant in the bar [in Byron, Illinois], that they went to Rockford to get cocaine. That they struck a deer on the way [and knocked out a headlight]. That *coming back* he [sexually and physically] assaulted her [along the roadside close to Byron]. That [afterwards he wanted her to get in the truck, but] she hid in the corn field. That he later came back. The truck [with the headlight out] came back and then left again at which time she had gone down the road a bit and hid in the bushes. That she then met a state Officer Johnson and told him of the assault. That a trial was held. She testified and the defendant was convicted.

Immediately after Smith testified, the trial court instructed the jury that it could consider her testimony for motive and intent only and was not to infer that Anderson was a bad person. The trial court repeated this instruction at the end of the trial, immediately prior to jury deliberations.

Anderson contends the trial court erred in admitting Smith's testimony for the purposes of motive and intent. He also contends that even if the evidence were properly admitted for those purposes, the details—concerning the circumstances under which the defendant met the victim, their drug use, the location of the offense and the circumstances surrounding the offense—were unnecessary and improperly prejudiced the jury with a display of Anderson's propensity of violence towards women.

When reviewing a trial court's discretionary decision to admit other acts evidence, we will not reverse the trial court if it examined the relevant facts, applied a proper standard of law, and, using a demonstrative rational process, reached a conclusion that a reasonable judge could reach. *See State v. Sullivan*, 216 Wis. 2d 768, 780–81, 576 N.W.2d 30, 36 (1998).

Generally other acts evidence is not admissible because of the fear that it may invite the jury to focus on an accused's character and because it magnifies the risk that jurors will punish the accused for being a bad person regardless of his or her guilt of the crime charged. *Id.* at 783, 576 N.W.2d at 37; *see also* § 904.04(2), STATS.[5] However, other acts evidence may be admitted when relevant for some purpose other than that of demonstrating the accused's propensity to commit the act charged. *Id.* Our supreme court has set forth a three-step analytical framework for addressing whether other acts evidence should be admitted:

> (1) Is the other acts evidence offered for an acceptable purpose under Wis. Stat. § (Rule) 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident?
>
> (2) Is the other acts evidence relevant, considering the two facets of relevance set forth in Wis. Stat. § (Rule) 904.01? The first consideration in assessing relevance is whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action. The second consideration in assessing relevance is whether the evidence has probative value, that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more

---

[5] Section 904.04(2), STATS., provides:

OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

probable or less probable than it would be without the evidence.

(3) Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence? *See* Wis. Stat. § (Rule) 904.03.

*Sullivan*, 216 Wis. 2d at 772–73, 576 N.W.2d at 32–33 (footnote omitted).

██

The trial court allowed the State to present Smith's testimony of Anderson's previous sexual assault and the resulting conviction for the purpose of putting Anderson's alleged statement that "a dead bitch can't say anything" into the context of Anderson's past experience. We agree that when placed in the context of his previous acts and conviction, this statement attributed to Anderson is evidence of his motive to stay out of prison and his intent to kill Boshears so she could not testify against him. We conclude this was an acceptable purpose under the first step in the *Sullivan* analysis. *See State v. Hereford*, 195 Wis. 2d 1054, 1069, 537 N.W.2d 62, 68 (Ct. App. 1995) ("Testimony of other acts for the purpose of providing the background or context of a case is not prohibited by § 904.04(2), STATS."); *Sullivan*, 216 Wis. 2d at 772, 576 N.W.2d at 32 (motive and intent are acceptable purposes under § 904.04(2)).

Anderson does not argue that motive and intent are not relevant under the second step in the *Sullivan* analysis, and we conclude they are. Intent is an element of the crime of first-degree intentional homicide, *see* § 940.01(1), STATS., and motive is related to the actor's purpose or intent. *See State v. Plymesser*, 172

Wis. 2d 583, 593–94, 493 N.W.2d 367, 372 (1992). Therefore, both motive and intent relate to a fact or proposition that is of consequence to the determination of the action.

The second consideration of relevance—whether the evidence has any probative value—depends in part upon its nearness in time, place and circumstances to the alleged crime or element sought to be proved.[6] *Whitty v. State*, 34 Wis. 2d 278, 294, 149 N.W.2d 557, 564 (1967). There are similarities between the prior sexual assault of Smith and the charges against Anderson in this case: in both cases Anderson allegedly met a woman in a bar, drove away with her to purchase drugs, assaulted the woman on the roadside, left her there, and then returned to the scene of the assault, presumably to look for his victim. Under the circumstances of this case, the more similar the two events are, the more likely it is that Anderson was thinking of the previous offense when he allegedly made the statement that "a dead bitch can't say anything." For this reason we conclude the other acts evidence has a tendency to make the consequential fact or proposition more probable than it would be without the evidence.

Anderson also asks that we review the relevance of the details the trial court allowed the State to present in regard to the previous assault. As we have just explained, similarities between the prior act and the event Anderson was charged with in this case add to

---

[6] The standards of relevancy based on the nearness in time, place and circumstances of the two events are stricter when the other acts evidence is used to prove identity, but it is an appropriate consideration even when identity is not the purpose of the other acts evidence. *See Whitty v. State*, 34 Wis. 2d 278, 294, 149 N.W.2d 557, 564 (1967).

the probative value of the prior act. We therefore conclude the trial court did not erroneously exercise its discretion in allowing the State to present the prior act in greater detail than Anderson argued for. Although it is true that the bare elements of the prior act—Smith testified against Anderson and that testimony resulted in his being sentenced to prison—are the crux of the evidence supporting the purposes of motive and intent, we conclude that a reasonable judge could allow some details of the prior act in order to show the similarities of the two events, thereby increasing the probative value of the prior act.

In reviewing the final step of the *Sullivan* analysis, we conclude the trial court did not erroneously exercise its discretion in determining that the probative value of the other acts evidence was not substantially outweighed by the danger of unfair prejudice. Anderson argues that the trial court did not adequately consider prejudice in its analysis. We disagree. The trial court stated, "the probative value clearly outweighs any prejudicial offense [sic]" provided the court gives an "appropriate limiting instruction." In addition to this conclusory statement, the trial court reviewed the similarities of the two events to establish the probative value of the prior act; and, in order to reduce the unfairly prejudicial effect, the court limited the testimony of Smith and instructed the jury twice that the evidence could be used only for the purposes of motive and intent. Since we presume that jurors follow the court's instructions, *see State v. Adams*, 221 Wis. 2d 1, 12, 584 N.W.2d 695, 700 (Ct. App. 1998), a cautioning instruction is normally sufficient to cure any adverse effect attendant with the admission of other acts evidence. *State v. DeKeyser*, 221 Wis. 2d 435, 452,

585 N.W.2d 668, 676 (Ct. App. 1998), *review denied*, 221 Wis. 2d 656, 588 N.W.2d 633 (1998). We recognize that this is not always the case. *See id.* at 452–53, 585 N.W.2d at 676 (instruction alluded to improper purpose); *Sullivan*, 216 Wis. 2d at 791–92, 576 N.W.2d at 40 (cautionary instruction was too broad and prosecutor argued for an improper consideration of other act in closing). Nevertheless we conclude, as the trial court did, that the cautioning instruction, given two times in this case, was sufficient to cure any adverse effects from unfair prejudice.

## Doctrine of Completeness

Anderson also contends the trial court erred when it refused to admit portions of his previous statement to Detective David Bier to rebut other portions of his statement that had been introduced by the State through Bier's testimony. Detective Bier testified that he spoke with Anderson shortly after Boshears' body was recovered; Anderson told him that he was present when Boshears was killed; and Anderson said she was thrown into the water three times. In response to the question, "What did [Anderson] tell you [about how Boshears got into the water the third time]?" Detective Bier testified:

> He [Anderson] said that he had ahold of her by placing his hands underneath her arms and around her upper torso and that he was walking and that [Moore] had picked her up by the feet and that the 2 of them were walking towards the truck with [Anderson] walking backwards towards the truck. He says when they got near the bridge rail on the driver's side of the truck, [Moore] threw her over the railing.

133

The actual wording of this portion of Detective Bier's report was:

> He went on to say that after the first two episodes
> when [Moore] struck the victim, he [Moore] threw
> the victim over the bridge on the passenger side of
> the vehicle, which would be the west side of the
> bridge, by himself. After the third episode of strik-
> ing the victim with the hammer, and the victim
> went completely limp, [Anderson] picked her up by
> placing his hands under her arms and around her
> upper torso, and [Moore] picked her up by the legs.
> [Anderson] said that he was walking backward
> toward the truck and it was his assumption that
> they were going to put her back in the back of the
> truck, but as they got near the bridge railing on the
> driver's side (east side), [Moore] threw the victim
> over the side of the bridge for the third time.

Detective Bier did not include the first sentence or the underlined portion of this excerpt of his report in his testimony; nor did he include other parts of Anderson's statement to him that Moore did the actual killing, and Moore threw the hammer off a bridge at another location.

On cross-examination, Anderson's counsel attempted to question Detective Bier on Anderson's statement that Moore was the one that struck Boshears with the hammer and threw the hammer off another bridge, but the State objected on hearsay grounds and the court sustained the objections. Later, as part of the defense, Anderson's counsel recalled Detective Bier and asked him to testify further as to what Anderson had said to him "about assisting in picking up . . . Boshears," and "whether [Anderson told Detective Bier] he tried to help [Boshears] by picking her up and putting her in the truck." The State objected

on hearsay grounds, arguing that the State could offer the detective's account of Anderson's statement because the statement was an admission of a party opponent offered against the party, and therefore not hearsay, *see* § 908.01(4)(b), STATS., but when Anderson offered any part of his statement through Bier, it was inadmissible hearsay. Anderson's counsel argued that it was not hearsay because the State "opened the door" and further questioning was necessary to clear up the "distorted view" presented to the jury. Counsel contended he was entitled to ask about any part of Anderson's statement to Detective Bier, but, in particular, about "what happened on the bridge involving that young lady including whether he tried to help by picking her up and putting her in the truck." The trial court sustained the State's objection and stated that Anderson had a right not to testify, but he could not get his testimony in "by the back door" and avoid subjecting himself to cross-examination by the State.

The issue on appeal is whether the trial court properly exercised its discretion in precluding Anderson from presenting any additional portion of Detective Bier's report of Anderson's statement. We conclude the trial court did not properly exercise its discretion because the underlined portion of the report is necessary under the doctrine of completeness and was therefore admissible whether or not Anderson chose to testify.

The purpose of the rule of completeness and the method for applying it was recently explained in *State v. Eugenio*, 219 Wis. 2d 391, 410, 579 N.W.2d 642, 651 (1998), decided shortly after the trial in this case.[7] The

---

[7] The rule of completeness is codified at § 901.07, STATS.:

rule is designed to make the presentation of evidence fair and effective in order to ascertain the truth. "The critical consideration is whether the part of the statement offered into evidence creates an unfair and misleading impression without the remaining statements." *Id.* at 411, 579 N.W.2d at 651. The trial court must first determine if the partial evidence admitted has in fact created a distorted view of the evidence as a whole. If it has, the court must determine what additional portions of the evidence are necessary to cure the distortion. *Id.* at 412, 579 N.W.2d at 651. These decisions are discretionary. *Eugenio* at 412–13, 59 N.W.2d at 652.

The State argues that the trial court's decision was based on a balancing of the unfairness to the State of the admission of Anderson's statement through Bier, without the ability to cross-examine Anderson, against the unfairness to Anderson of admitting only potions of his statement. The State asserts that we approved of just such a balancing in *State v. Briggs*, 214 Wis. 2d 281, 293, 571 N.W.2d 881, 887 (Ct. App. 1997), *review denied*, 217 Wis. 2d 520, 580 N.W.2d 690 (1998), and

---

**Remainder of or related writings or recorded statements.** When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

The issue in *State v. Eugenio*, 219 Wis. 2d 391, 410, 579 N.W.2d 642, 651 (1998), was whether § 901.07 applied to oral statements, and the court concluded that it did. We had earlier held that it did in *State v. Sharp*, 180 Wis. 2d 640, 655, 511 N.W.2d 316, 323 (Ct. App. 1993), but the court in *Eugenio* relied on other codified rules of evidence, rather than common law rules of evidence as we did in *Sharp*, to reach this result. *See Eugenio*, 219 Wis. 2d at 407–10, 579 N.W.2d at 649–51.

that the supreme court's statements in *Eugenio* also support this approach.

We do not agree with the State's reading of *Briggs*. In *Briggs*, the prosecutor read approximately ten pages of the defendant's 158-page deposition from a prior civil suit to the jury, and then objected to defense counsel's attempt to read "substantially the rest" of the deposition during presentation of the defense. The trial court sustained the objection, because the court found it to be hearsay without any available exception and found it "unnecessary under the circumstances to apply the rule of completeness to overcome the inadmissibility on hearsay grounds." *Id.* We upheld the court's exercise of discretion, stating that the "court considered the circumstances of the case, the material to be presented, the rule of completeness, and the hearsay rules before excluding the evidence." *Id.* The State relies on the very next sentence: "The [trial] court refused to use the rule of completeness, a rule of fairness, to allow Briggs to introduce his testimony without taking the stand and facing cross-examination by the state." *Id.* When read in context, this sentence means that the trial court determined the rule of completeness did not require reading the rest of the 158 pages to cure distortion, and therefore it excluded those pages on hearsay grounds. The trial court in *Briggs* did not exclude a portion of a statement that it had determined was necessary to cure the distorting effect of a portion already admitted.

*Eugenio*, we conclude, does not support the State's position, either. In *Eugenio*, defense counsel introduced prior statements of the victim to highlight inconsistencies in her testimony. (Prior inconsistent statements, if the declarant testifies at trial and is subject to cross-examination concerning the statement,

137

are not hearsay. *See* § 908.01(4)(a)1, STATS.) The trial court then permitted the State to offer the prior statements in their entirety to show there was consistency on significant factual issues. Eugenio argued that the consistent portions admitted by the court under the rule of completeness were inadmissible hearsay and should not have been admitted for that reason. The supreme court upheld the trial court's ruling, addressing Eugenio's objection in this way:

> [W]here the evidence is offered not to prove the truth of the matter asserted, but rather for some other purpose, such as providing a fair context on which the trier of fact can evaluate the evidence already offered by the opposing party, the evidence is by definition not hearsay. *See* Dale A. Nance, *A Theory of Verbal Completeness*, 80 IOWA L. REV. 825, 840–41 (1995). In other cases, where the evidence may fall within the classic definition of hearsay, the circuit court in its discretion may determine whether the fairness requirement of the rule of completeness outweighs the principles underpinning the exclusionary rules and permits the trier of fact to consider the additional offer of oral statements. *See id.* at 839–41; Dale A. Nance, *Verbal Completeness and Exclusionary Rules Under the Federal Rules of Evidence*, 75 TEX. L. REV. 51, 85–86 (1996); *see also Rokus v. Bridgeport*, 463 A.2d 252, 256 (Conn. 1983).

*Eugenio*, 219 Wis. 2d at 411–12, 579 N.W.2d at 651.

The State argues that the second sentence supports its position, because that is an acknowledgment that where an additional portion of a statement sought to be admitted under the doctrine of completeness is inadmissible hearsay, the trial court has the discretion to exclude it for that reason, even if that portion is

necessary to cure distortion under the rule of complete-ness.[8] However, we do not read the sentence in this way, because the articles and the case the court cites as support all state precisely the opposite.

Dale Nance writes in *A Theory of Verbal Complete-ness*, 80 IOWA L. REV. 825, 839–41 (1995), that courts routinely use the rebuttal rule (for our purposes, the same as the completeness rule) to override some admis-sibility rules—most frequently, the hearsay prohibition—and he calls this the "trumping function" of the completeness rule. He cites to *Rokus v. City of Bridgeport*, 463 A.2d 252 (Conn. 1983), as an example of this trumping function, the case cited by the *Eugenio* court. In *Rokus*, a civil suit, the court concluded that a trial court erred in prohibiting the defendant, during cross-examination, from eliciting other portions of his out-of-court statement from the testifying witness. The court acknowledged that the statement was admissible when offered by the plaintiff, and, ordinarily, would be inadmissible hearsay when offered by the defendant himself. However, the court observed that the rule of completeness was an "independent exception to the rule against hearsay," and that "[w]hen a portion of a party's out-of-court admission is placed in evidence by an opponent, the party has a right to introduce other relevant portions of the conversation from which it was excerpted, irrespective of whether it is self-serving or

---

[8] Although the State does not expressly state that a trial court has the discretion to exclude the additional portion even if it is necessary to cure a distortion, we presume that is the State's argument: if an additional portion is not necessary to cure a distortion, then the doctrine of completeness does not apply, and there is no tension between that doctrine and exclu-sionary rules such as those governing hearsay.

hearsay." *Id.* at 69.[9] In the second Nance article cited by the *Eugenio* court, Nance also writes about the admissibility of the completing evidence "notwithstanding (some) otherwise applicable exclusionary rules," and goes on to discuss the court's discretion in the timing and the mode of the presentation of the completing evidence, which it distinguishes from the trumping function. Dale A. Nance, *Verbal Completeness and Exclusionary Rules Under the Federal Rules of Evidence*, 75 Tex. L. Rev. 51, 85–86 (1996).

Nothing in these references suggests that, after a court has determined that admission of an additional portion of a party's out-of-court statement is necessary to cure a distortion, a court has or should have the discretion to exclude it because it is inadmissible hearsay. Rather, reading the *Eugenio* statement relied on by the State in context, we understand it this way: in many cases the additional portion a court determines should be admitted under the completeness rule will not be offered for the truth of the matter asserted and therefore will not be hearsay; but even when it would otherwise be inadmissible hearsay, it is admissible if the court has, in the exercise of its discretion, determined that the rule of completeness requires its admission. This statement is consistent not only with

_____

[9] Nance discusses alternative methods for conceptualizing the trumping function—it could be either an "independent exception to the rule against hearsay" as the court in *Rokus* states, or, instead, the portion necessary for completeness could partake of the same rule that permitted the original portion to be admitted because it is simply completing that, even though at the insistence of the opposing party. Dale A. Nance, *A Theory of Verbal Completeness*, 80 Iowa L. Rev. 825, 845–46 (1995). He concludes: "However the trumping function is conceived, it forms a crucial part of the [completeness] rule." *Id.* at 847.

the references the *Eugenio* court cites, but also with the well-established formulation of the doctrine of completeness. *See* 1 KENNETH S. BROWN ET AL., MCCORMICK ON EVIDENCE § 56 (John William Strong ed., 4th ed. 1992); *State v. Sharp*, 180 Wis. 2d 640, 655, 511 N.W.2d 316, 323 (Ct. App. 1993) ("Under the rule of completeness, otherwise inadmissible evidence will be admissible").

We acknowledge that the facts of *Eugenio* did not require the court to apply the trumping function. As we understand the court's decision, especially in light of its citation to Nance's article, the court may not have considered the additional portions of the prior inconsistent statements as hearsay because they were not offered for the truth of the matter asserted, but to provide context.[10] And, because *Eugenio*, like *Sharp*, involved prior inconsistent statements, neither is a case in which the declarant chose not to testify and was, for that reason, not subject to cross-examination. There was no need in either case to determine whether the declarant's decision not to testify affected the rule of completeness. We therefore look to courts in other jurisdictions to determine how they have applied the completeness rule in factual contexts similar to this case.

---

[10] As Nance puts it:

> When original incomplete evidence is offered to impeach a witness with a prior inconsistent statement and the completeness counter attempts to rehabilitate the witness by showing that the prior statement, taken in context, is not inconsistent with the witness's original testimony, both parts of the prior statement may be used to assess the credibility of the witness, without direct regard to their truth or falsity.

Dale A. Nance, *Verbal Completeness and Exclusionary Rules Under the Federal Rules of Evidence*, 75 TEX. L. REV. at 841.

The State has not provided us with any authority for the proposition that whether a criminal defendant chooses to testify is a proper consideration in deciding whether to admit additional portions of his out-of-court statement under the completeness rule. The only cases we have been able to discover that have considered the issue have soundly rejected the view that additional portions of a defendant's out-of-court statement necessary to prevent distortion are not admissible solely because the defendant chooses not to testify. In *United States v. Walker*, 652 F.2d 708, 713 (7th Cir. 1981), the court concluded that the trial court had erroneously exercised its discretion in excluding portions of the defendant's testimony at his first trial that were relevant to the issues and explanatory of the excerpts read by the State. The court first noted that FED. R. EVID. 106, the counterpart to § 901.07, STATS., is primarily designed to affect the order of proof, requiring a weighing, within the trial court's discretion, between the adequacy of the "repair work" necessary to correct any potentially misleading impression caused by an incomplete presentation, against the waste of time and attention and unfairness involved in blunting the proponent's presentation of his case when everything is required to be read at one time. *Id.* The court next considered the impact of a criminal defendant's decision not to testify on the rule of completeness, stating:

> In criminal cases where the defendant elects not to testify, as in the present case, more is at stake than the order of proof. If the Government is not required to submit all relevant portions of prior testimony which further explain selected parts which the Government has offered, the excluded portions may never be admitted. Thus there may be no "repair work" which could remedy the unfairness of

> a selective presentation later in the trial of such a case. While certainly not as egregious, the situation at hand does bear similarity to "(f)orcing the defendant to take the stand in order to introduce the omitted exculpatory portions of (a) confession (which) is a denial of his right against self-incrimination."

*Id.* (quoted source omitted). Finally, the court concluded that requiring the government to read the additional portions of the defendant's statement would not have seriously disrupted its case, particularly in view of its duty to conduct a fair trial and considering that the potential unfairness to the defendant was substantial—he was penalized for exercising his right not to testify. *Id.* at 713–14; *see also King v. State*, 287 S.W.2d 642 (Tex. Crim. App. 1956); *United States v. Glover*, 101 F.3d 1183, 1191–92 (7th Cir. 1996); *United States v. Sutton*, 801 F.2d 1346, 1370 (D.C. Cir. 1986); *Henderson v. United States*, 632 A.2d 419, 426 (D.C. App. 1993).

We consider the reasoning of *Walker* to be sound, to be consistent with *Eugenio*, and we adopt it here. We hold that when a defendant in a criminal case objects to testimony of his out-of-court statement as incomplete, or attempts to cross-examine the witness on additional portions of the defendant's out-of-court statement and the State objects, the court should make the discretionary determination required by *Eugenio* without regard to whether the defendant intends to testify. Once the court has determined that any additional portion of the statement is necessary under the *Eugenio* standard, it must permit the presentation of that additional portion, although the timing of that presentation is discretionary: it may occur during the State's case or when the defense recalls the witness during its case.

Fairness to the State does not require that the additional portion necessary under the completeness rule be excluded unless the defendant testifies, because the *Eugenio* test is sufficiently narrow to insure that only the additional portion necessary to avoid distortion is admissible. On the other hand, it would be unfair to the defendant to force him or her to choose between giving up the constitutional right not to testify and correcting a distorted impression of his or her prior statement presented by the State.

Because the court in this case did not consider whether the completeness rule required additional portions of Anderson's statement to be presented, but instead ruled that all additional portions were excluded unless Anderson chose to testify, it erroneously exercised its discretion. *See State v. Wyss*, 124 Wis. 2d 681, 734, 370 N.W.2d 745, 770 (1985) (a court exceeds the limits of its discretion if an otherwise discretionary determination rests upon an error of law), *overruled on other grounds*, *State v. Poellinger*, 153 Wis. 2d 493, 506, 451 N.W.2d 752, 757 (1990). We generally remand cases to the trial court when the court did not exercise its discretion based on a misunderstanding of the law. *See State v. Peterson*, 222 Wis. 2d 449, 460, 588 N.W.2d 84, 89 (Ct. App. 1998). In this case, however, the discretionary decision involves a comparison of Detective Bier's written statement with a discrete and brief portion of his testimony, and we are persuaded by our review of these materials that there is only one reasonable conclusion regarding the incomplete testimony.

We conclude, as a matter of law, that Detective Bier's testimony presents a misleading or distorted view of what Anderson told Bier his assumption was when he carried Boshears towards the truck immedi-

ately before she was thrown into the river the third time. Bier's testimony potentially conveys that Anderson assumed they were going to throw her in the river but, according to Bier's report, Anderson told Bier "he [Anderson] assum[ed] that they were going to put her in the back of he truck." We further conclude that this additional statement, and no more, is necessary to correct the misleading or distorting impression. Therefore, the trial court erred in not permitting defense counsel to elicit this portion of Anderson's statement to Bier on cross-examination.

To the extent that Anderson contends that other portions of his statement—that Moore threw her into the river the first two times, hit her with the hammer before each of the three times she was thrown into the river, threw the hammer away, and was the one who actually murdered her—must also be admitted under the completeness rule, we do not agree. The prosecutor's question to Detective Bier asked what Anderson told him about how Boshears was thrown into the river the third time. Anderson is entitled, under the completeness rule, to have his statement on that point fairly and completely presented. However, he is not entitled under that rule to the admission of other parts of his statement that describe other conduct by Moore, because those other parts are not necessary to avoid a misleading or distorted impression.

*Harmless Error*

Having determined the trial court erred, we next consider whether that error was harmless. We must set aside the verdict if there is a reasonable possibility that the error contributed to the conviction. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 232 (1985). The

burden of establishing there is no such reasonable possibility is on the State as the beneficiary of the error. *Sullivan*, 216 Wis. 2d at 792, 576 N.W.2d at 41. We are persuaded from our review of the record that there is no reasonable possibility the error contributed to the conviction.

Since Anderson was charged as party to the crime, the jury had to find beyond a reasonable doubt either that Anderson intentionally killed Boshears or that he aided and abetted Moore in the homicide.[11] The jury was free to choose either theory. *See* § 939.05, STATS. If the jury believed Moore's testimony that Anderson murdered Boshears, then it could have found Anderson guilty of murder beyond a reasonable doubt based on Moore's testimony alone. However, if the jury did not believe Moore's testimony—and there were certainly reasons not to—then the jury could have returned a guilty verdict only if it found beyond a reasonable doubt that Anderson aided and abetted in the homicide. The prosecutor argued in closing that Anderson aided and abetted Moore in the homicide by helping Moore carry Boshears to the location where Moore threw her over the bridge to her death. For the purpose of our harmless error analysis, we must assume the jury convicted him on this theory.

We are convinced there is no possibility that the admission of Anderson's statement to Detective Bier that Anderson said he assumed they were going to put

---

[11] The trial court instructed the jury that in order to find Anderson guilty of aiding and abetting Moore in the homicide, they needed to find beyond a reasonable doubt that Anderson: (1) assisted Moore in committing the crime (or was ready and willing to assist and Moore knew that), and (2) acted with the knowledge or belief that Moore was committing the crime or intended to commit the crime.

Boshears back in the truck would have changed the jury's verdict. First, this statement was not conclusive that Anderson did not know he was helping Moore, only that he told the police he did not know he was. The fact that Anderson claims he is innocent was not new information to the jury. Second, defense counsel did succeed, without objection, in supplementing Detective Bier's testimony on Anderson's statement when he called Bier adversely as part of the defense:

> Q. Detective Bier in your discussions with Mr. Anderson that Mr. Folts [prosecutor] questioned you about, you have already testified about the picking up of the body, is that correct?
>
> A. Yes.
>
> Q. And you have already testified that Mr. Anderson was heading back to the truck with the body?
>
> A. Yes.
>
> Q. And it was at that point that Mr. Moore threw the body over the side, is that correct?
>
> A. That's what Gordon Anderson told us.[12]

Thus, the jury did hear Detective Bier confirm that Anderson said he was heading back to the truck with Boshears.

Third, the prosecutor in closing argument did not argue that Anderson admitted or implied to Detective Bier that when he picked Boshears up under the arms, he knew Moore was going to throw her over the bridge. Rather, the prosecutor acknowledged that Anderson

---

[12] The prosecutor did object to the next question on hearsay grounds: "And that Gordon Anderson wasn't able to hold on to the body. It went into the water?" The trial court sustained the objection.

said he thought they were going to put her in the truck, but then stressed that it was improbable that Anderson did not assist Moore in throwing her over the bridge because he had the heavier part of her body. Thus, both the prosecutor's version of Anderson's statement and the detective's answers as an adverse witness conveyed the essence of the portion of Anderson's statement that we have concluded was erroneously excluded by the court. We are persuaded that, if the jury determined that Anderson was guilty of aiding and abetting in the homicide rather than actually committing the homicide, it did so because it did not believe that Moore, holding only Boshears' feet or legs, could have thrown her over the bridge without Anderson's help. We are further persuaded that there is no reasonable possibility that the jury would have decided otherwise had Detective Bier related Anderson's statement to him that he (Anderson) assumed they were going to put Boshears back in the truck.

*By the Court.*—Judgment affirmed.