**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 16, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No.** **2019AP802-CR** | Cir. Ct. No. 2015CF230 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** **DISTRICT IV** |

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

SAMUEL L. NICHOLS, JR.,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Monroe County: TODD L. ZIEGLER, Judge. *Affirmed*.

Before Kloppenburg, Graham, and Nashold, JJ.

¶1 GRAHAM, J. Samuel Nichols appeals a judgment of conviction for sexual assault and for capturing images of nudity without consent. He argues that the circuit court erroneously denied his motion to suppress incriminating photographs found on his cellphone, and also that the court erroneously admitted

evidence of a prior sexual assault he committed. For the reasons set forth below, we reject both arguments and affirm.

## BACKGROUND

¶2    The following facts are taken from evidence presented at pretrial hearings and at the subsequent jury trial.

¶3    On the evening of April 18, 2015, Nichols visited the home of a friend. B.B. was also visiting that same home, along with her husband and children. B.B. and Nichols had not previously met. The adults drank alcohol, and B.B. and her husband were too intoxicated to drive home. The family stayed overnight, and B.B. fell asleep on the living room floor.

¶4    B.B. later reported to a law enforcement officer that she awoke to someone touching her face, lifting her clothing, and touching her breasts. She reported that she briefly opened her eyes and saw Nichols standing over her, masturbating, and using his phone to take photographs of her body. B.B. did not provide a description of the phone that Nichols used to take the photographs. According to B.B., the assault continued for some time during which she pretended to be asleep, and Nichols eventually put his hand under her pants and his fingers into her vagina.

¶5    The officer interviewed Nichols several days later. Nichols admitted that he and B.B. were both at his friend's house on the night of the alleged assault, but he denied touching or taking pictures of B.B. At the officer's request, Nichols showed the officer his phone and identified it as the phone that he had with him on the night in question. The officer observed that the phone was a smartphone that was capable of taking and storing photographs.

¶6    The officer asked Nichols for permission to examine the phone. Nichols consented to the search, unlocked his phone, and showed the officer his photo gallery. It contained just three photographs, none of which were personal, much less incriminating. The officer knew, based on his training and experience, that data on smartphones can be hidden or deleted and can also be retrieved through forensic analysis. The officer told Nichols that he intended to keep the phone until he could obtain a warrant to search its data. After the warrant was issued, a forensic analyst recovered photographs that appeared to have been taken on the night of the alleged assault and showed what B.B. identified as her unclothed breasts and vaginal area.

¶7    The State charged Nichols with third-degree sexual assault and capturing images of nudity without consent. Nichols moved to suppress the photographs found on his phone on Fourth Amendment grounds, and the circuit court denied his motion. The State then moved to introduce evidence of a prior sexual assault which occurred in 1998 and for which Nichols was convicted. Evidence of a defendant's "other crimes" is generally inadmissible, but such evidence may sometimes be admitted for limited purposes, such as to prove the identity of the perpetrator when that issue is "of consequence." *See* WIS. STAT. § 904.04(2)(a) (2017-18);[1] *State v. Sullivan*, 216 Wis. 2d 768, 772, 576 N.W.2d 30 (1998). The circuit court granted the State's motion, concluding that evidence of the 1998 incident was admissible to prove identity.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶8 The jury convicted Nichols on all counts, and this appeal followed. Additional facts are discussed as needed below.

## DISCUSSION

¶9 Nichols contends that the circuit court erred in two ways. First, he argues that the circuit court should have granted his motion to suppress the evidence gathered from his phone because it was seized without probable cause in violation of the Fourth Amendment. Second, he argues that the court should have denied the State's motion to admit other-acts evidence because there are significant differences between the 1998 incident and the crime charged. We consider each argument in turn.

### I. The Seizure of Nichols' Phone

¶10 We begin with Nichols' argument that the circuit court should have suppressed the evidence gathered from his phone on Fourth Amendment grounds. An order granting or denying a motion to suppress "is a mixed question of law and fact to which we apply a two-step standard of review. We review the circuit court's findings of historical fact under the clearly erroneous standard, and we review independently the application of those facts to constitutional principles." *State v. Tomaszewski*, 2010 WI App 51, ¶5, 324 Wis. 2d 433, 782 N.W.2d 725.

¶11 The Fourth Amendment protects against "unreasonable searches and seizures" by the government. U.S. CONST. amend. IV. Seizures conducted without a warrant are unreasonable unless they fall within a recognized exception to the warrant requirement. *See State v. Brereton*, 2013 WI 17, ¶24, 345 Wis. 2d 563, 826 N.W.2d 369. The State bears the burden to prove that one of the

4

recognized warrant exceptions applies. *State v. Denk*, 2008 WI 130, ¶36, 315 Wis. 2d 5, 758 N.W.2d 775.

¶12 Our supreme court has determined that for Fourth Amendment purposes, cellphones are analogous to closed containers, and that the same search and seizure principles that apply to containers also apply to cellphones. *State v. Carroll*, 2010 WI 8, ¶¶26-27, 322 Wis. 2d 299, 778 N.W.2d 1 (citing *United States v. Place*, 462 U.S. 696, 701 (1983) (addressing a law enforcement seizure of two suitcases)). When an officer has "probable cause to believe that a container holds … evidence of a crime," the Fourth Amendment permits the officer to seize the container "pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *Place*, 462 U.S. at 701.

¶13 Since the parties' arguments turn on our supreme court's discussion in *Carroll*, it is helpful to provide a brief summary of that case. In *Carroll*, the defendant dropped his cellphone during the course of an arrest. 322 Wis. 2d 299, ¶¶4-6. The arresting officer picked it up and saw an image of the defendant with drug paraphernalia displayed on the phone. *Id.*, ¶6. The officer seized the phone and kept it until he could obtain a warrant to search it for evidence of drug trafficking. *Id.*, ¶¶10, 28. The *Carroll* court determined that the initial warrantless seizure was proper based on the plain view doctrine, and then turned to the officer's continued possession of the phone. *Id.*, ¶¶25-26. Based on the rule for containers articulated in *Place*, 462 U.S. 696, the *Carroll* court explained that it is proper to seize a cellphone pending issuance of a warrant if "(1) there is probable cause to believe that it contains evidence of a crime, and (2) if exigencies of the circumstances demand it." *Carroll*, 322 Wis. 2d 299, ¶26. The court determined that there was probable cause to believe the phone contained evidence

5

of drug trafficking, *id.*, ¶¶10, 29, and that exigent circumstances were present because, if the phone had been returned to Carroll, he "could have deleted incriminating images and data, such as phone numbers and calling records stored in the phone," *id.*, ¶32.

¶14     We now turn to the case before us.  It is undisputed that Nichols consented to the initial search of the phone, and consent is an exception to the warrant requirement.  *See* **Schneckloth v. Bustamonte**, 412 U.S. 218, 219 (1973).  What the parties dispute is whether the continued seizure of the phone for the time it took to obtain a warrant was lawful.

¶15     As shown above, this inquiry turns on two separate questions: whether the officer had probable cause to believe that the phone contained evidence of a crime, and whether the "exigencies of the circumstances demand it." **Carroll**, 322 Wis. 2d 299, ¶26.  The circuit court concluded that exigent circumstances were present and, although Nichols does not expressly concede this point, he does not make any developed argument about exigency in his appellate briefs.  At best, Nichols argues that there was no exigency because there was no probable cause.  We therefore focus our attention on the parties' arguments about probable cause.[2]

¶16     Whether probable cause exists is an objective inquiry based on the totality of the circumstances, including the historical facts known to the officer as well as the officer's training and experience.  **State v. Lange**, 2009 WI 49, ¶20,

---

[2] To the extent that Nichols intended to make an exigency argument that is separate from his argument about probable cause, we reject it as undeveloped.  *See* **State v. Pettit**, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).

317 Wis. 2d 383, 766 N.W.2d 551. In this context, probable cause means that, based on the information known to the police, there was "a fair probability" that Nichols' phone contained evidence of a crime. *Carroll*, 322 Wis. 2d 299, ¶28.

¶17 Probable cause may be based on information from a reliable informant. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). For the purpose of assessing probable cause, individuals who purport to be victims of crimes are generally considered to be reliable informants, even though the information they have provided has not yet been tested or proved. *See State v. Cheers*, 102 Wis. 2d 367, 395-96, 306 N.W.2d 676 (1981). Reliability can also be shown by corroboration of details. *State v. Romero*, 2009 WI 32, ¶21, 317 Wis. 2d 12, 765 N.W.2d 756.

¶18 Here, the officer knew that B.B. had accused Nichols of using his phone to take pictures of her unclothed body without her consent, and taking or possessing such pictures is a crime. *See* WIS. STAT. § 942.09(2)(am). Nichols himself corroborated some of the details in B.B.'s report, including the facts that he had been with B.B. and possessed his phone on the night of the alleged assault. And Nichols also confirmed that the phone he handed to the officer to search was the same phone that was with him that night. Based on the totality of circumstances known to the officer, we agree with the circuit court that there was probable cause to believe that Nichols' phone contained evidence of a crime.

¶19 Nichols argues that the officer lacked probable cause for the seizure because, unlike in *Carroll*, there was no incriminating image "in plain view" on his phone. But Nichols cites no authority to support the proposition that a

container must be incriminating on its face to be subject to seizure on the basis of probable cause.[3] As we have explained, probable cause is assessed based on the totality of the circumstances known to the officer at the time the item was seized. Here, although the facts that gave rise to probable cause were not "in plain view" on Nichols' phone, they were nevertheless known to the officer and sufficient to establish probable cause.

¶20 Nichols also appears to argue that because the officer did not find the incriminating photographs in his initial search of the phone, any probable cause that may have otherwise existed was dispelled. We disagree. Based on his training and experience, the officer knew that images on phones can be hidden or deleted, and also that such images can be recovered through forensic analysis. Further, Nichols had informed the officer that he was studying computer programming, and so the officer would have had particular reason to believe Nichols would be proficient at hiding or deleting images on his phone.

¶21 For the reasons above, we reject Nichols' argument that the officer seized his phone without probable cause. And because Nichols makes no other argument regarding the warrantless seizure of his phone, we conclude that the State has met its burden to show that the seizure was lawful.[4]

---

[3] It is unsurprising that Nichols found no authority to support this proposition, since such a rule would make little sense. The reason that courts have developed specific standards for assessing probable cause to seize a closed container is because there is usually nothing in plain view on the container that is incriminating.

[4] Because we conclude the continued seizure of the phone was lawful, we do not address the State's alternative argument regarding the independent source doctrine. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

## II. The Other-Acts Evidence

¶22    We now turn to Nichols' argument that the circuit court erroneously admitted evidence of a prior sexual assault that he committed in 1998 and for which he was later convicted. We review the admission of such evidence for erroneous exercise of discretion. *State v. Hurley*, 2015 WI 35, ¶28, 361 Wis. 2d 529, 861 N.W.2d 174. A circuit court properly exercised its discretion if it "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach." *State v. Hunt*, 2003 WI 81, ¶34, 263 Wis. 2d 1, 666 N.W.2d 771.

¶23    The admissibility of other-acts evidence is governed by WIS. STAT. § 904.04(2). Section 904.04(2)(a) provides that in most situations, evidence of a person's "other crimes, wrongs, or acts" may not be admitted to prove the person's character or show that the person "acted in conformity therewith."[5] Such evidence is often referred to as "propensity evidence." *Sullivan*, 216 Wis. 2d at 783. Propensity evidence is inadmissible because it improperly invites jurors to "focus on an accused's character" and "magnifies the risk that jurors will punish the accused for being a bad person regardless of his or her guilt of the crime charged." *Id.*

¶24    However, other-acts evidence may be admitted under WIS. STAT. § 904.04(2)(a) when "its relevance does not hinge on an accused's propensity to

---

[5] *But see* WIS. STAT. § 904.04(2)(b)2.; *see also* **State v. Gee**, 2019 WI App 31, ¶28, 388 Wis. 2d 68, 931 N.W.2d 287 (pursuant to § 904.04(2)(b)2., other-acts evidence may be admitted to prove conduct in some circumstances when "first-degree sexual assault or first-degree sexual assault of a child is the crime being prosecuted"). We cite § 904.02(2)(b)2. for the sake of completeness; that statute has no application in this case.

commit the act charged." *Sullivan*, 216 Wis. 2d at 783. Additionally, Wisconsin had adopted the "greater latitude" rule, which provides for more liberal admission of other-acts evidence in cases where the defendant has been charged with a "serious sex offense." § 904.04(2)(b)1.; *State v. Dorsey*, 2018 WI 10, ¶35, 379 Wis. 2d 386, 906 N.W.2d 158. Here, Nichols was charged with violating WIS. STAT. § 940.225(3), a "serious sex offense," and the greater latitude rule applies. *See* WIS. STAT. § 939.615(1)(b)1. (identifying crimes that are categorized as serious sex offenses).

¶25     When assessing the admissibility of other-acts evidence, Wisconsin courts apply the three-step analysis set forth in *Sullivan*, 216 Wis. 2d at 771-72. In the first step, the proponent of the evidence must show that the other-acts evidence "is offered for a permissible purpose," such as to establish motive, intent, identity, or some other non-propensity purpose delineated in WIS. STAT. § 904.04(2)(a). *Id.* at 772. In the second step, the proponent must show that the evidence is relevant to that permissible purpose. *Id.* at 772; *see also State v. Payano*, 2009 WI 86, ¶¶67-68, 320 Wis. 2d 348, 768 N.W.2d 832. There are two distinct "facets" to the relevance inquiry:  whether the "proposition for which the evidence is offered is of consequence to the determination of the action" and whether the evidence "has probative value when offered for that purpose." *Id.*, ¶68. In the third and final step, the circuit court weighs whether the evidence's probative value is "substantially outweighed by the danger of unfair prejudice" or other countervailing considerations. *Sullivan*, 216 Wis. 2d at 772-73. As our supreme court has explained, courts should apply the *Sullivan* analysis even in "greater latitude" situations like this that are governed by § 904.04(2)(b)1. *Dorsey*, 379 Wis. 2d 386, ¶33. And in such situations, the court has greater latitude at each step of the analysis to make a determination that favors admission

of the other-acts evidence. *See id.*; ***State v. Hammer***, 2000 WI 92, ¶¶23, 30, 35, 236 Wis. 2d 686, 613 N.W.2d 629.

¶26 In this case, prior to trial, the State moved to introduce evidence of a 1998 sexual assault that Nichols was convicted of committing, and the material facts from the 1998 assault are as follows. Nichols was 19 years old, and the victim was a 15-year-old girl. Nichols and the victim had both stayed overnight at a house where a group of people had gathered, and the victim awoke to find Nichols touching her breasts over her clothing. She slapped Nichols' hand away, but Nichols nonetheless proceeded to put his hand underneath her bra and touch her breasts, then unzip her pants and touch her vagina. The State offered evidence of the incident to prove intent, motive, and identity, all of which are permissible purposes of other-acts evidence. After considering the parties' arguments, the circuit court determined that evidence of the prior assault was "relevant to the issue of identity" and that its probative value was "not substantially outweighed by the danger of unfair prejudice." The court cited the greater latitude rule in support of its decision.

¶27 As the appellant, Nichols bears the burden to prove that the circuit court erroneously exercised its discretion. *See **Winters v. Winters***, 2005 WI App 94, ¶18, 281 Wis. 2d 798, 699 N.W.2d 229. Although Nichols does not expressly explain how his arguments fit within the ***Sullivan*** framework, he does not appear to make any argument regarding the first or third steps of the analysis. We read his brief as focusing on the second step—the circuit court's determination that the evidence was relevant to prove identity. As mentioned above, there are two "facets of relevance," ***Sullivan***, 216 Wis. 2d at 772, and we consider each in turn.

¶28 The first facet of relevance is whether the "proposition for which the evidence is offered is of consequence to the determination of the action." *Payano*, 320 Wis. 2d 348, ¶68. The circuit court determined that "motive" and "intent" were not relevant because they were not elements of the charged crime, and the State does not argue that the circuit court erred in this regard.

¶29 We now turn to the circuit court's determination that "identity" was of consequence to the determination of the action. We evaluate the circuit court's exercise of discretion based on the information known to the court at the time it made its decision. *See Zeis v. Fruehauf Corp.*, 56 Wis. 2d 486, 489, 202 N.W.2d 225 (1972). As we explain below, it appears that at that time, the prosecutor, the defense, and the court all anticipated that Nichols would raise a mistaken identity defense at trial.

¶30 During the hearing on the other-acts motion, the prosecutor argued that there were "five people in the residence" on the night of the assault, "[t]hree of them being males," and that the prosecutor "would be surprised" if Nichols did not argue that B.B.'s assailant was somebody else who was in the house that night. Nichols' attorney did not contradict this assertion; indeed, the trial record demonstrates that he intended to argue that DNA evidence gathered from B.B.'s clothing showed that someone else had assaulted her. He ultimately abandoned

this approach at trial for what he explained on the record were strategic reasons,[6] and instead argued that the photographs on Nichols' phone did not depict B.B. and may have been downloaded from the internet. Although Nichols did not end up pursuing a mistaken identity defense at trial, we conclude that at the time the court made the decision to admit the other-acts evidence, it would have reasonably determined that evidence related to the identity of the assailant would be of consequence to the determination of the action.

¶31 The second facet of relevance is whether the evidence "has probative value when offered" for a permissible purpose—here, identity. *Payano*, 320 Wis. 2d 348, ¶68. Generally, the probative value of other-acts evidence depends on "the similarity between the charged offense and the other act," and can be evaluated by the prior incident's "nearness in time, place and circumstances to the charged crime." *State v. Gray*, 225 Wis. 2d 39, 58, 64, 590 N.W.2d 918 (1999). A higher standard applies when the evidence is offered to prove identity. *State v. Anderson*, 230 Wis. 2d 121, 131 n.6, 600 N.W.2d 913 (Ct. App. 1999). To be admissible to show identity, other-acts evidence must have "such a concurrence of common features and so many points of similarity with the crime charged that it 'can reasonably be said that the other acts and the present act constitute the imprint

---

[6] Although an analyst ruled Nichols out as a match for much of the DNA found on B.B.'s clothing, the analyst could not conclusively rule out Nichols as a possible match for unidentified male DNA collected from B.B.'s underwear. At trial, Nichols' attorney sought to elicit testimony from the analyst that Nichols' DNA was not found on the waistband of B.B.'s pants because, he argued, this evidence was relevant to whether Nichols was the person "who lifted up [B.B.]'s clothes" on the night of the assault. The State objected, and before the circuit court could rule on the issue, Nichols' attorney explicitly abandoned this approach. He explained that he was concerned about opening the door to testimony that Nichols could have been a match for the inconclusive DNA sample collected from B.B.'s underwear. Rather than question the analyst about the test's ambiguous conclusions, the parties instead reached a stipulation, read to the jury, that "Nichols' DNA was not found on the items tested." The State asserted that this stipulation, "while maybe not being 100% accurate," expressed the "gist" of the DNA report.

of the defendant.'" ***State v. Kuntz***, 160 Wis. 2d 722, 746, 467 N.W.2d 531 (1991) (quoting ***State v. Fishnick***, 127 Wis. 2d 247, 263-64, 378 N.W.2d 272 (1985)); *see also* ***State v. Marinez***, 2011 WI 12, ¶26 n.17, 331 Wis. 2d 568, 797 N.W.2d 399; ***Hurley***, 361 Wis. 2d 529, ¶64.

¶32 Here, the circuit court applied the proper legal test, and it concluded that there were "sufficient points of similarity" between the 1998 incident and the charged crime to constitute Nichols' "imprint." It observed that both incidents occurred "in a residence where [Nichols and the victim] each had presumably spent the night, both individuals had fallen asleep, both woke up to Mr. Nichols touching their breasts, and both situations proceeded to Mr. Nichols' hand inside their pants."

¶33 Nichols does not discuss any of the "points of similarity" identified by the circuit court in his appellate brief, much less argue that they are insufficient to show his "imprint."[7] Instead, he identifies three ways in which the charged crime differs from the prior act: (1) B.B. was 22 years old, while the 1998 incident involved an underage victim; (2) B.B.'s perpetrator took photographs of the assault, a detail not present in the 1998 incident; and (3) the assault of B.B.

---

[7] Sexual assaults of unconscious victims occur all too frequently, and some of the details of the 1998 incident that were also present in this case may be common details of such assaults. *See, e.g.*, ***Roberson v. State***, 327 Ga. App. 804, 805, 761 S.E.2d 361 (2014) (in this sexual assault case, the defendant "pulled down [the victim's] shorts and pulled up her shirt" while she was asleep, and touched her breasts and vagina); ***State v. Gomez***, 151 Idaho 146, 149, 254 P.3d 47 (Ct. App. 2011) (in this sexual assault case, one victim "would often wake up to [the defendant] touching her, both over and under her clothing, on her breasts and between her legs" and another victim "woke up to [the defendant] touching her, and she thought he had been touching her breasts and in between her legs because her bra and her pants were undone"). However, although Nichols "respectfully disagrees" with the State's argument that the incidents were similar, he cites no case law and develops no argument that the similarities identified by the circuit court lack the unique characteristics of an identifying "imprint."

took place 17 years after the 1998 incident. As we understand Nichols' argument, he contends that the circuit court failed to give these factual differences adequate weight. Yet, the court acknowledged each of these distinctions in its written decision and explained why they did not render the other-acts evidence irrelevant. It explained that the difference in the victims' ages was not significant because "Nichols was 19 at the time [of the 1998 incident] and the victim was not an extremely young child." Likewise, it determined that the absence of photographs in the 1998 incident was not significant because "times have changed; and phones with cameras make it much easier to accomplish that task." Finally, as to the 17-year gap between the incidents, the circuit court concluded that the prior incident "is not so remote in time that it is not relevant." Nichols offers no response to the court's reasoning. He does not cite any authority to support his position that the distinctions between the incidents should be given greater weight, nor does he explain why his arguments might overcome the greater latitude rule.

¶34     The question on review is "not whether this court, ruling initially on the admissibility of the evidence, would have permitted it to come in," but whether the circuit court "exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record." *Kuntz*, 160 Wis. 2d at 745. Here, the circuit court applied the correct legal test. It used a demonstrated rational process to consider and reject the arguments Nichols raises on appeal, and Nichols does not explain why the court's reasoning was wrong. Accordingly, we conclude that Nichols has not met his burden to show that the court could not reasonably have determined that the other-acts evidence had probative value when offered to prove identity. *See Hunt*, 263 Wis. 2d 1, ¶53; *Payano*, 320 Wis. 2d 348, ¶68. The greater latitude rule, the discretionary nature of evidentiary

15

decisions, and our standard of review are all substantial factors supporting our decision to affirm the court's exercise of discretion in this case.

## CONCLUSION

¶35    For all of these reasons, we conclude that the circuit court did not err when it denied Nichols' motion to suppress the incriminating photographs found on his cellphone, and that Nichols has not met his burden to show the court erroneously exercised its discretion when it granted the State's motion to admit other-acts evidence.  Accordingly, we affirm.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.

No.   2019AP802-CR(C)

¶36   KLOPPENBURG, J. (*concurring*). I agree that, based on the discretionary nature of the circuit court's decision, the greater-latitude rule, and the information known to the court at the time of its decision, Nichols has failed to show that the court erroneously granted the State's motion to admit other-acts evidence. I write separately to revive the observation, expressed at least over twenty-five years ago in divided opinions by the Wisconsin Court of Appeals, that the other-acts rule, whose purpose is to guard against the risk that a jury will find a defendant guilty "because he or she has committed other bad acts in the past," has been effectively "gutt[ed]" by the cases applying it. *State v. Clark*, 179 Wis. 2d 484, 498, 507 N.W.2d 172 (Ct. App. 1993) (Sundby, J., dissenting); *State v. Johnson*, 184 Wis. 2d 324, 341, 516 N.W.2d 463 (Ct. App. 1994) (the "other-acts" decision of *Whitty v. State*, 34 Wis. 2d 278, 149 N.W.2d 557 (1967) is "not the bastion it once was and it is time for the courts to say so") and 351-52, (Anderson, P.J., concurring) (referencing the "gutting" of the other-acts rule); *State v. Tabor*, 191 Wis. 2d 482, 497-98, 529 N.W.2d 915 (Ct. App. 1995) (Nettesheim, J., concurring in part, dissenting in part).

¶37   In *Whitty*, our Wisconsin Supreme Court stated:

> Over sixty years ago this court in *Paulson v. State* (1903), 118 Wis. 89, 98, 94 N.W. 771, pointed out and explained the rule that the evidence against an accused should be confined to the very offense charged and neither general bad character nor commission of other specific disconnected acts, whether criminal or merely meretricious, could be proved against him [or her]. The exceptions pointed out were all based upon relevancy and probative value.

34 Wis. 2d at 292-93.

¶38 This rule has since been codified in WIS. STAT. § 904.04(2)(a) (2017-18):[1]

> [E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*Clark*, 179 Wis. 2d at 497-98 (Sundby, J. dissenting); *see also* ***State v. Hurley***, 2015 WI 35, ¶¶55-56, 361 Wis. 2d 529, 861 N.W.2d 174.

¶39 In ***State v. Sullivan***, 216 Wis. 2d 768, 771-72, 576 N.W.2d 30 (1998), our supreme court developed the three-step analysis set forth above by the majority in ¶23. As to the first step, whether the evidence is offered for a permissible purpose, our supreme court has stated, "Identifying a proper purpose for other-acts evidence is not difficult and is largely meant to develop the framework for the relevancy examination." ***Hurley***, 361 Wis. 2d 529, ¶62. Similarly as to the second step, whether the evidence is relevant, although this step is "'significantly more demanding'" than the first, our supreme court has stated that establishing relevance also "'does not present a high hurdle for the proponent of the other-acts evidence.'" *Id.*, ¶76 (quoted source omitted). Thus, these first two steps do not seem to present much of an obstacle to the admission of other-acts evidence. The third step is whether the evidence's probative value is substantially outweighed by the risk or danger of unfair prejudice. *Id.*, ¶92, n.23.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Importantly, "'[t]he circuit court's job is to ensure that the jury will not prejudge a defendant's guilt or innocence in an action because of his [or her] prior bad act.'" *Id.*, ¶88 (quoted source omitted, internal quotation marks removed). However, in cases where the circuit court admits the evidence, our supreme court relies primarily on the circuit court's providing "limiting instructions" directing the jury not to use the evidence for this purpose. *Id.*, ¶¶89-90.

¶40 Here, it appears that, as the case was actually presented at trial, identity was not raised as an issue, Majority at ¶¶27-28, and, therefore, the proffered proper purpose of identity became a thin stand-in for the improper purpose of propensity. And, under these circumstances, it is difficult to imagine what the jurors would possibly have made of the instruction to consider Nichols' prior crime "only on the issue of identity," and not on the issue of whether Nichols "has a certain character or … character trait" with which he "acted in conformity … with respect to" the charged crime. *See* WIS. STAT. § 904.04(1) ("Evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion.").

¶41 As far back as 1995, Judge Nettesheim noted that case law showed that the other-acts rule was "routinely used against defendants for the very purpose the statute excludes it," to prove propensity. *Tabor*, 191 Wis. 2d at 498 (Nettesheim, J., concurring in part, dissenting in part); *see also Clark*, 179 Wis. 2d at 498 (Sundby, J., dissenting) ("Other-acts evidence is now routinely admitted to show that the defendant must be guilty because he or she has committed other bad acts in the past."). There is no indication that this trend has abated, or that Judge Anderson's observation that "[t]he State's success [in obtaining admission of other-acts evidence] can be seen in the annotations [of WIS. STAT.

3

§ 904.04] … which are overflowing with reported cases of exceptions," ***Johnson***, 184 Wis. 2d at 351-52 (Anderson, P.J., concurring), is not still true. We cannot be confident that the other-acts evidence statute's purpose—to ensure that a defendant is convicted based on conduct, not character—is actually being served.

¶42 As Judge Nettesheim stated in ***Tabor***,

> My separate writing here is not to lobby for or against the wisdom of this de facto dismantling of § 904.04(2), STATS. Rather, my purpose is to again urge, as we did in ***Johnson***, that [circuit] and appellate courts stop paying lip service to the statute and ***Whitty*** and, instead, recognize the law for what it really is. As we said in ***Johnson***, "Unless or until our supreme court reverses the direction of the law in this area, we should stop writing appellate opinions which pretend to honor ***Whitty*** but actually offend it." ***Johnson***, 184 Wis. 2d at 341.

***Tabor***, 191 Wis. 2d at 498 (Nettesheim, J., concurring in part, dissenting in part).

¶43 Accordingly, I respectfully concur.

4