STATE of Wisconsin, Plaintiff-Respondent,

v.

Edward A. HAMMER, Defendant-Appellant.

Supreme Court

*No. 98–2900–CR. Oral argument March 7, 2000.—Decided July 11, 2000.*

(On certification from the court of appeals.)

## 2000 WI 92

(Also reported in 613 N.W.2d 629.)

For the defendant-appellant there were briefs by *Rex R. Anderegg* and *Anderegg & Mutschler, LLP*, Milwaukee, and oral argument by *Rex R. Anderegg*.

For the plaintiff-respondent the cause was argued by *William C. Wolford*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. N. PATRICK CROOKS, J. This case comes before us on certification from the District II Court of Appeals. The appellant, Edward A. Hammer, seeks review of a circuit court decision, which allowed other acts evidence pertaining to his past sexual conduct to be admitted in a current sexual assault case against him. Hammer also seeks review of the circuit court's ruling to prohibit testimony regarding the alleged victims' past sexual conduct, arguing that his Sixth Amendment right to confront witnesses and compel testimony on his behalf outweighed the state's interest in applying the rape shield statute. Hammer argues that the circuit court's rulings on these issues denied his right to a fair trial.

¶ 2. The circuit court convicted Hammer of second-degree sexual assault of a child under Wis. Stat. § 948.02(2) (1995–96),[1] and fourth-degree sexual assault under Wis. Stat. § 940.225(3m). The court ruled that the other acts evidence against Hammer would be allowed because the evidence demonstrated a motive, opportunity, mode or method of operation, and absence of mistake under Wis. Stat. § (Rule) 904.04(2), which the court found were proper purposes under the statute. The circuit court also decided that the other

---

[1] All subsequent references to the Wisconsin Statutes are to the 1995–96 text unless otherwise noted.

acts evidence was relevant, in accordance with Wis. Stat. § (Rule) 904.01, and that under Wis. Stat. § (Rule) 904.03, the probative value of the evidence substantially outweighed the danger of unfair prejudice against Hammer. However, the circuit court prohibited testimony regarding the victims' past sexual conduct, in accordance with the rape shield statute, Wis. Stat. § 972.11, despite Hammer's argument that this violated his right to confront witnesses against him and compel testimony on his behalf under the Sixth Amendment.

¶ 3. We affirm the decision of the circuit court. We hold that the evidence of Hammer's past sexual conduct is admissible under the three-step test set forth in *State v. Sullivan*, 216 Wis. 2d 768, 772–73, 576 N.W.2d 30 (1998). The evidence of Hammer's past sexual conduct was properly admitted to prove mode or method of operation, and therefore, to establish identity. Further, the evidence is relevant and its probative value is not substantially outweighed by danger of unfair prejudice, confusion, misleading the jury, or undue delay.

¶ 4. We also hold that the evidence of the victims' prior sexual conduct was properly kept from the jury in accordance with the rape shield statute. The state's interest in applying the rape shield statute outweighed the defendant's Sixth Amendment right to confront witnesses and compel testimony. Finally, we hold that the circuit court's admission of Hammer's prior sexual conduct, while excluding the victims' prior sexual conduct, did not violate Hammer's right to a fair trial.

## I.

¶ 5. The record indicates that in the early morning hours of June 29, 1997, fourteen-year-old Mark D.,

seventeen-year-old Steven D., and their friend, sixteen-year-old Josh C., were staying at the home of defendant Edward A. Hammer's parents in Waterford, Wisconsin, where Hammer resided. Allegedly, the defendant sexually assaulted all three boys during their stay at his parents' home.

¶ 6. The three boys had arrived at the home the day earlier accompanied by the defendant's brother, Steven Hammer. Steven Hammer is the stepfather of Mark D. and Steven D. Steven Hammer and the three boys had driven from Ohio to pick up Steven Hammer's two younger children, who had been visiting at their grandparents' home.

¶ 7. The defendant is a homosexual. (R. at 40:43–44.) On the day of their arrival, but before the alleged incident, the boys allegedly made derogatory remarks to the defendant about homosexuals, even though they knew of his sexual orientation. Steven Hammer also intensely disapproved of his brother's homosexuality, but the rest of the Hammer family apparently was comfortable with it.

¶ 8. All three boys testified at trial as to their experiences while staying at the Hammer residence.[2] In the early morning of June 29, 1997, the boys were asleep in the basement of the defendant's residence. Steven D. slept on the bottom tier of a bunk bed, while Mark D. and Josh C. shared a hideaway bed. The defendant had been at a wedding that night, returning home at approximately 3:00 a.m. Around that time, Steven D. awoke because he felt someone touching his genital area with cold hands under his underwear and boxer shorts. He did not know who had touched him,

---

[2] We rely primarily on the victims' testimony at trial in establishing the facts of this case, but supplement their testimony with information from the police reports.

but the hands did not touch his penis. He also noticed that the covers had been pulled off of him. He slapped at the hands to push them away.

¶ 9. After experiencing this sensation, Steven D. got up to go to the restroom. On his way to the restroom, he found the defendant lying on the floor next to the bed where Josh C. and Mark D. slept, but by the time he returned to bed, the defendant was gone. He also noticed that when the boys originally went to bed, two night-lights had been left on. When he woke up, the night-lights were turned off. Upon returning to bed, he turned the night-lights back on. Shortly thereafter, Steven D. recalled that the defendant came back downstairs. Steven D. got out of bed again, telling the defendant that he was sleepless and thirsty. The defendant sat down in a chair next to the hideaway bed and asked Steven D. why he was unable to sleep. He replied that he did not know why he was unable to sleep. Steven D. procured a soda from the downstairs refrigerator and after drinking it, went back to bed. As he was falling asleep, he heard the defendant talking to Mark D. about the wedding. His next recollection was of Josh C. getting into Steven D.'s bed and saying that Ed had done something to Mark and him and that he wanted to kill Ed. Josh C. also said that he and Mark had awakened Steven Hammer to tell him what happened.

¶ 10. Mark D. testified that the defendant awoke him by tapping him on his forehead. The defendant allegedly said that he was cold and wondered if Mark D. would move over so that the defendant could get into bed. According to Mark D., while the defendant was in bed talking to Mark D. about football and wrestling, the defendant reached over and touched Josh C. in the hip and buttocks. (R. at 36:205, 219–222.) Mark D. then

went to the restroom, and when he returned, he found the defendant lying in the middle of the bed next to Josh C. Mark D. got back into the bed next to the defendant and fell asleep.

¶ 11. Not long after Mark D. got back into bed, Josh C. said "quit" it and Mark D. heard Josh C. "slap something away." (R. at 36:206.) Josh C. testified that he did not see who had touched him at that time, but later confirmed that the defendant was in bed with him. He also testified that the individual touched his back under his t-shirt and his buttocks and legs over his shorts. After slapping the individual's face and throwing his hands away from Josh C.'s body, Josh C. went to the restroom and then got into the top bunk bed.

¶ 12. According to Mark D., the defendant then turned toward him. The defendant touched Mark D.'s penis with his hand. The defendant also grabbed Mark D.'s hand and put it on his penis while he sucked Mark D.'s penis. Mark D. also testified that he "kept asking me if I am going to remember this in the morning." (R. at 36:206.) At first Mark D. did not respond and pretended to be asleep, hoping that the defendant would leave him alone, but when the defendant began to suck his penis, he got out of bed. Mark D. woke up Josh C. and the two boys went upstairs together. While Mark D. and Josh C. were conversing upstairs, they saw the defendant crawling up the basement stairs to go to his bedroom. The boys then woke up Steven Hammer and Steven D. and told them what had just transpired.

¶ 13. The defendant's parents were also awakened and told of the boys' accusations. Mrs. Hammer found the defendant asleep in his own bedroom, and the defendant denied touching the boys improperly. Nonetheless, Steven Hammer had the boys prepare

written statements and summoned the police, whereupon the defendant was arrested. Mrs. Hammer told the police that her son had confided that when he becomes intoxicated, he has homosexual urges upon which he acts. The defendant's blood alcohol level at 7:21 a.m. was .13.

¶ 14. The amended information reflects that the defendant was charged with (1) attempted second-degree sexual assault of an unconscious victim (Steven D.) under Wis. Stat. § 940.225(2)(d); 2) fourth-degree sexual assault (of the same person—Steven D.) under Wis. Stat. § 940.225(3m); (3) second-degree sexual assault of a child (Mark D.) under Wis. Stat. § 948.02(2); and (4) fourth-degree sexual assault (of Josh C.) under § 940.225(3m).

¶ 15. Prior to trial, the state requested permission to use prior acts evidence. The state wanted to bring into evidence an incident that had supposedly occurred five to seven years earlier when the defendant was a guest at the Ohio home of Jason B. The defendant awoke Jason B. by fondling Jason B.'s penis. Jason B. did not report the incident to the police at that time. He recalled that the event took place more than four years ago. Jason B. would have been twenty years old and the defendant eighteen. However, the defendant's sister presented photographs and a letter to show that the incident actually took place in 1990, when the defendant was a minor, at age sixteen.

¶ 16. The circuit court, the Honorable Gerald P. Ptacek presiding, allowed in the evidence of this prior sexual assault, despite the defendant's objections at a motion hearing. Judge Ptacek reasoned that the facts of the two incidents were similar and that the evidence was admissible to show motive, opportunity, mode or method of operation, and absence of mistake:

It's clear obviously that the facts of these charges now pending and the offered *Whitty* evidence are about as mirror image as they could be in terms of similarity.

The victims are males. The assaults are alleged to have occurred at nighttime during sleep when the victims are either unconscious or asleep or not aware of what's happening. They awakened to be touched. The manner of touching is very similar where the penis is touched at least in some of the counts in the pending charges and that's clearly what's alleged to have occurred in the offered *Whitty* evidence.

Now, again, its [sic] similar in terms of sleeping arrangements, where the defendant is sleeping in the same environment as his victims either in the same room or close by. . . .

The *Whitty* evidence case law that describes what is referred to as the greater latitude rule when it comes to juveniles I think has to be weighed in perspective because as I understand the cases [ ], the younger the victim, the more applicable is that concept.

In this case, the victims are technically still juveniles but they are older teenagers and not young children who are below the teenage years. . . . That has some bearing on the greater latitude application.

I am satisfied as it relates to the issue of mistake, absence of mistake. . . . This would respond to that in that obviously it's clear this *Whitty* evidence is an intentional act,. . .motive in the purpose of the touching would be sexual motivation, a method of operation taking a sleeping victim, approaching them in their sleep when they're not in a position to defend or respond. . .and certainly opportunity

where opportunity is used with a sleeping victim in an environment of sleep in a bedroom in the privacy of a home. These are all again relating to opportunity, so they're clearly relevant on the issue of relevance. . . .

[I]t would be unfairly prejudicial to the defendant certainly it's harmful to any defendant. . .but I am satisfied in this case in light of the. . .jury instructions. . .[that] protect a defendant against. . .improper use of evidence.

I'm satisfied it would not be. . .unfairly prejudicial to the defendant and therefore, I will allow the evidence, so I'll rule the offered *Whitty* evidence can be presented.

(R. at 33:20–23.)

¶ 17. The circuit court revisited his ruling on the Jason B. prior acts evidence on the first day of trial and reiterated that the evidence was admissible to show motive, mode of operation, opportunity, and absence of mistake. The defense counsel pointed out that the defense's theory would not be based on accident or "innocent explanation," but rather the theory that the defendant had never engaged in any contact with the boys. The defense argued that this disqualified the court's earlier reasons for admitting the other acts evidence because the state wanted to use the evidence to contest a theory the defense would not raise. The circuit court rejected the defendant's argument and admitted the testimony of Jason B. However, before Jason B. testified and at the end of the trial, the court read the standard jury instruction, WI-JI Criminal 275, "Cautionary Instruction: Evidence of Other Crimes, Wrongs, Acts [Required if Requested]—§ 904.02," to the jury.

¶ 18. The prosecution also referred to the Jason B. evidence in closing. The prosecution referred to the defendant's homosexuality to show that the defendant had the opportunity to assault the boys, stating that opportunity is "a situation where he's in a residence with other individuals who are asleep and then he decides to act on these impulses of his and proceed to have sexual contact." (R. at 40:152.)

¶ 19. The circuit court did not, however, permit the defense to question Steven D. on cross-examination about any sexual contact between Mark D., Josh C., and himself. The defendant sought to establish that he and his mother had witnessed the three boys engaging in sexually related acts the day before the defendant allegedly committed his acts. He would have presented evidence that Josh C. attempted to put his penis into Steven D.'s mouth while Steven D. was taking a nap and that Mark D. stuck his buttocks into Steven D.'s face. Both the defendant and his mother told the boys to stop this behavior. Additionally, the defendant's mother would have testified that she witnessed the boys pulling up their pants quickly when she went down to the basement. This evidence, the defendant argued, would show a motive to fabricate and a pattern of conduct proximately related in time to his charged acts. The state objected, arguing that the rape shield statute applied to preclude the evidence. The circuit court balanced the rape shield statute against the defendant's Sixth Amendment rights, and refused to permit the testimony.

¶ 20. On February 13, 1998, the defendant was found guilty of second-degree sexual assault of a child under Wis. Stat. § 948.02(2), and fourth-degree sexual assault under Wis. Stat. § 940.225(3m)—the charges relating to Mark D. and Josh C. He was acquitted of the

charges relating to Steven D.—attempted second-degree sexual assault of an unconscious victim under § 940.225(2)(d), and fourth-degree sexual assault under § 940.225(3m).

## II.

■

¶ 21. The first issue we address is whether the circuit court properly admitted evidence of the defendant's prior sexual assault of Jason B. We must determine whether the circuit court erroneously exercised its discretion when it admitted the evidence. *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983). We uphold a circuit court's discretion if the court "exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record." *State v. Wollman*, 86 Wis. 2d 459, 464, 273 N.W.2d 225 (1979). If there was a reasonable basis for the court's determination, then we will not find an erroneous exercise of discretion. *Pharr*, 115 Wis. 2d at 342 (citing *Boodry v. Byrne*, 22 Wis. 2d 585, 589, 426 N.W.2d 503 (1964)).

¶ 22. We conclude that the evidence of the defendant's prior sexual assault was admissible under the three-step analytical framework set forth in *Sullivan*, 216 Wis. 2d at 772–73. In *Sullivan* we stated that we ask the following three questions in assessing the admissibility of other acts evidence:

> (1) Is the other acts evidence offered for an acceptable purpose under Wis. Stat. § (Rule) 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident?
> (2) Is the other acts evidence relevant, considering the two facets of relevance set forth in Wis.

Stat. § (Rule) 904.01? The first consideration in assessing relevance is whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action. The second consideration in assessing relevance is whether the evidence has probative value, that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence.

(3) Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence? *See* Wis. Stat. § (Rule) 904.03.

*Id.*

¶ 23. In a sex crime case, the admissibility of other acts evidence must be viewed in light of the greater latitude rule. The greater latitude rule was first stated in 1893 in *Proper v. State*, 85 Wis. 615, 628–30, 55 N.W. 1035 (1893). It applies in a sex crime case to admit other acts evidence, particularly when a child victim is involved. *State v. Friedrich*, 135 Wis. 2d 1, 25, 398 N.W.2d 763 (1987) (stating that the rule is especially useful "in both incest cases and cases involving indecent liberties with children.") The rule helps other acts evidence to come in under the exceptions stated in Wis. Stat. § (Rule) 904.04(2). *State v. Fishnick*, 127 Wis. 2d 247, 256, 378 N.W.2d 272 (1985). We have explained the rationale behind the rule in the following manner:

"A 'greater latitude of proof as to other like occurrences' is clearly evident in Wisconsin cases dealing

702

with sex crimes, particularly those involving incest and indecent liberties with a minor child. This is not so much a matter of relaxing the general rule that it is not competent in a prosecution for one crime to introduce evidence of other offenses as it is a matter of placing testimony concerning other acts or incidents within one of the well established exceptions to such rule. . . ." *Hendrickson v. State*, 61 Wis. 2d 275, 279, 212 N.W.2d 481 (1973). (Footnote omitted).

*Id.* We reaffirm our earlier decisions that the greater latitude rule facilitates the admissibility of the other acts evidence under the exceptions set forth in § (Rule) 904.04(2). In *State v. Davidson*, 2000 WI 91, ¶ 51, 236 Wis. 2d 537, 613 N.W.2d 60,. we concluded that "in sexual assault cases, especially those involving assaults against children, the greater latitude rule applies to the entire analysis of whether evidence of a defendant's other crimes was properly admitted at trial." Here, the greater latitude rule facilitates the admission of Jason B.'s testimony.

¶ 24. We first consider whether the evidence of the Jason B. incident is offered for an admissible purpose under Wis. Stat. § (Rule) 904.04(2).[3] The evidence was admissible to show the alleged perpetrator's *modus operandi*, or mode or method of operation, through which the identity of the person who assaulted

---

[3] **Wisconsin Stat. § (Rule) 904.04 Character evidence not admissible to prove conduct; exceptions; other crimes. (2)** Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan knowledge, identity, or absence of mistake or accident.

Steven D., Mark D., and Josh C. may be proved. Identity is one of the enumerated exceptions under § (Rule) 904.04(2). Method of operation, while not specifically enumerated in § (Rule) 904.04(2), is one of the factors " 'that tends to establish the identity of the perpetrator.' " *State v. Hall*, 103 Wis. 2d 125, 139 n.6, 307 N.W.2d 289 (1981) (quoting *Francis v. State*, 86 Wis. 2d 554, 560, 273 N.W.2d 310 (1979)).

¶ 25. The identity of the defendant was among the other elements that the state had to prove. The defendant essentially concedes that because at least some of the victims did not see their perpetrator, "identity provided a facial basis to satisfy the first step of the three-step analytical framework." (Hammer's Br. at 29.) He argues, however, that since the circuit court prohibited testimony relating to the boys' sexual conduct, identity is not an issue in the case; therefore, the probative value of the evidence is greatly reduced and the evidence should be excluded. (Hammer's Br. at 29–30.) In *State v. Plymesser*, 172 Wis. 2d 583, 594–95, 493 N.W.2d 376 (1992), we rejected such an argument. If the state must prove an element of a crime, then evidence relevant to that element is admissible, even if a defendant does not dispute the element. *Id.*

¶ 26. The evidence was also admissible to prove mode or method of operation because of the similarity between the Jason B. incident and the case at hand. *See Hall*, 103 Wis. 2d at 139, 144–45 (comparing the similarity in method of operation between two crimes). At trial, Jason B. testified that he awoke late at night to find the defendant masturbating him. (R. at 40:15.) In this case, there was testimony that the defendant also entered into the area where the victims were sleeping and woke them up by trying to improperly touch them. (R. at 33.)

¶ 27. While the acceptable purpose under Wis. Stat. § (Rule) 904.04(2) that is the clearest—mode or method of operation establishing identity—certainly justifies the admissibility of the other acts evidence, the circuit court, applying the greater latitude rule, did not err in admitting the evidence to show motive and absence of mistake. Each of the four crimes the defendant was charged with under Wis. Stat. §§ 940.225(2)(d), 940.225(3m), and 948.02(2) related to "sexual contact." "Sexual contact" for the purpose of this case is defined as

> Intentional touching by the complainant or defendant, either directly or through clothing by the use of any body part or object, of the complainant's or defendant's intimate parts if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant.

Wis. Stat. § 948.01(5)(a). Jason B.'s testimony was properly admitted to prove motive because purpose is an element of sexual contact, and motive is relevant to purpose. *Plymesser*, 172 Wis. 2d at 595–96.

¶ 28. Similarly, according to the meaning of "sexual contact" under Wis. Stat. § 948.01(5)(a), the defendant had to intentionally touch the victims. The Jason B. testimony therefore was relevant to show that the defendant did not touch the victims by accident or mistake.

¶ 29. The state did not argue that opportunity was a permissible purpose for which the circuit court could admit the Jason B. testimony, and as such, we do not address it.[4]

---

[4] We note that to admit other acts evidence, not all of the exceptions under Wis. Stat. § (Rule) 904.04(2) must be met.

¶ 30. We next address the relevancy of the Jason B. testimony, considering the greater latitude rule as *Davidson* permits us to do. Evidence is relevant under Wis. Stat. § (Rule) 904.01 if it relates to a fact or proposition that is of consequence to the determination of the action and if it has probative value.[5] Identity was a fact of consequence to this case because Steven D. did not see who touched him. Identity was also an issue of consequence in the case because the defendant denied ever being in the basement that night. Further, he brought in evidence that his mother woke him up in his own bedroom.

¶ 31. The Jason B. testimony also has probative value. "The measure of probative value in assessing relevance is the similarity between the charged offense and the other act." *State v. Gray*, 225 Wis. 2d 39, 58, 590 N.W.2d 918 (1999). Similarity is demonstrated by showing the "nearness of time, place, and circumstance" between the other act and the alleged crime. *State v. Scheidell*, 227 Wis. 2d 285, 305, 595 N.W.2d 661 (1999). Here, during each incident, the defendant awakened the victims in the middle of the night by

"The exceptions listed in the statute [§ (Rule) 904.04(2)] are not mutually exclusive. The exceptions slide into each other; they are impossible to state with categorical precision and the same evidence may fall into more than one exception." *State v. Tarrell*, 74 Wis. 2d 647, 662, 247 N.W.2d 696 (1976) (Abrahamson, J., dissenting). What is required is "one" acceptable purpose. *State v. Sullivan*, 216 Wis. 2d 768, 772, 576 N.W.2d 30 (1998); *State v. Alsteen*, 108 Wis. 2d 723, 729, 324 N.W.2d 426 (1982).

[5] **Wisconsin Stat. § (Rule) 904.01 Definition of "relevant evidence".** "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

improperly touching them. The victims were all males, and with the exception of the fourteen-year-old victim, were approximately the same age.

¶ 32. The defendant argues that the Jason B. evidence is not probative because Jason B. was an adult and the defendant was a child when the incident occurred. In contrast, he argues, the victims in this case were children and the defendant was an adult. We do not find this to be a significant distinction since, in both cases, the ages of the young people involved were somewhat near the age of majority. Jason B. was between 18 and 20 years old when the incident occurred in Ohio, and the defendant was between 16 and 18 years old. Here, the defendant was in his midtwenties when the incident occurred, and the victims were in their middle to late teens. Moreover, other jurisdictions have found other acts evidence admissible even though the victims were of different ages. *State v. Cardell*, 970 P.2d 10, 11 (Idaho 1998); *Rary v. State*, 491 S.E.2d 861, 863 (Ga. App. 1997); *State v. Crocker*, 409 N.W.2d 840, 843 (Minn. 1987).

¶ 33. The defendant also argues that the other acts evidence is inadmissible because it was too remote in time, place and circumstances. It is within a circuit court's discretion to determine whether other acts evidence is too remote. *See Hough v. State*, 70 Wis. 2d 807, 814, 235 N.W.2d 534 (1975). There is no precise point at which a prior act is considered too remote, and remoteness must be considered on a case-by-case basis. *Friedrich*, 135 Wis. 2d at 25. Even when evidence may be considered too remote, the evidence is not necessarily rendered irrelevant if the remoteness is balanced by the similarity in the two incidents. *See State v. Mink*, 146 Wis. 2d 1, 16, 429 N.W.2d 99 (Ct. App. 1988)

(citing *Sanford v. State*, 76 Wis. 2d 72, 81, 250 N.W.2d 348 (1977)). This court has in other cases upheld the admission of other acts evidence that was more remote in time than the five to seven year time span in this case. *Plymesser*, 172 Wis. 2d at 596 (upholding the admissibility of thirteen-year-old evidence); *State v. Kuntz*, 160 Wis. 2d 722, 749, 467 N.W.2d 531 (1991) (upholding the admissibility of sixteen-year-old evidence). We conclude that the other acts evidence was not too remote, and certainly is balanced by the similarity between the two events.

¶ 34. We note that the circumstances and place of the two incidents also share common characteristics. While one incident took place in Ohio and the other in Wisconsin, both occurred in a home during an overnight visit. In both instances the defendant knew the victim. In sum, we conclude that the Jason B. incident was relevant evidence, because it related to a fact of consequence in this case and it had probative value.

¶ 35. Finally, we address whether the probative value of the other acts evidence is outweighed by the danger of unfair prejudice under Wis. Stat. § (Rule) 904.03.[6] Again, we keep in mind the greater latitude rule when balancing probative value against unfair prejudice. The probative value of evidence must not be outweighed by unfair prejudice, which is the "potential harm of a jury reaching the conclusion that because the defendant committed a bad act in the past, the defen-

[6] **Wisconsin Stat. § (Rule) 904.03 Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

dant necessarily committed the current crime." *Mink*, 146 Wis. 2d at 17 (citing *Fishnick*, 127 Wis. 2d at 261–62).

■■■■

¶ 36. The circuit court recognized the danger of prejudice in this case, but concluded that the evidence was not unfairly prejudicial. (R. at 33:22–23.) *See Gray*, 225 Wis. 2d at 64 (requiring that, to prevent admissibility, the probative value of the evidence must be outweighed by unfair prejudice, and not be merely prejudicial). Here, the court offered a cautionary instruction both before Jason B. testified and at the close of the case.[7] Cautionary instructions eliminate or minimize the potential for unfair prejudice. *Plymesser*,

---

[7] Before Jason B. testified, the court offered the following cautionary instruction to the jury:

Evidence will be received regarding other conduct of the defendant for which he is not on trial. Specifically, evidence will be received that the defendant engaged in sexual contact on another date. If you find that this conduct did occur, you should consider it only on the issues of motive, opportunity, absence of mistake or accident, and mode of operation.

You may not consider this evidence to conclude that the defendant has a certain character or a certain character trait and that the defendant acted in conformity with that trait or character with respect to the offenses charged in this case.

The evidence was received—or will be received only on the issues of motive, opportunity, absence of mistake or accident, and mode of operation. That is, motive, that means whether the defendant had a reason to desire the result of a crime; opportunity, that is, whether the defendant had the opportunity to commit the offense charged; absence of mistake or accident, that is, whether the defendant acted with the state of mind required for this offense; and mode of operation, the manner in which the defendant committed the offense with which he is charged.

You may consider this evidence only for the purposes I've described, giving it the weight you determine it deserves. It is not to be used to conclude that the defendant is a bad person or that—or for that reason is guilty of the offenses charged.

172 Wis. 2d at 596–97. *See also State v. Landrum*, 191 Wis. 2d 107, 122, 528 N.W.2d 36 (Ct. App. 1995). Here, the cautionary instruction specifically stated that the jury should not conclude from the evidence that the defendant was a "bad person." This is the type of cautionary instruction that was affirmed in *Fishnick*, 127 Wis. 2d at 262, and *Gray*, 225 Wis. 2d at 65.[8]

¶ 37. In sum, we affirm the circuit court's decision to admit Jason B.'s testimony because it satisfies the three-part *Sullivan* test for admissibility of prior acts evidence.

## III.

¶ 38. We next consider whether the rape shield statute, Wis. Stat. § 972.11,[9] applies in this case to

---

(R. at 40:9–10.) The circuit court also gave a similar instruction at the close of the trial. (R. at 40:130–31.)

[8] The defendant points out that in *Sullivan*, the cautionary instruction did not cure the unfair prejudice. However, Sullivan is distinguishable because in that case, the cautionary instruction was broadly stated and the prosecutor frequently referred to the prior acts evidence in both opening and closing. *Sullivan*, 216 Wis. 2d at 791. In this case, however, the prosecutor did not refer to the Jason B. incident during his opening statement (36:131–38), and only minimally referred to it during his closing statement. (40:132–55.) Moreover, the cautionary instructions in this case were tailored to prevent unfair prejudice.

[9] **Wisconsin Stat. § 972.11 Evidence and practice; civil rules applicable. (2)(a):** In this subsection, "sexual conduct" means any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and life-style.

(b) If the defendant is accused of a crime under § 940.225. . ., any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence

exclude testimony of the victims' alleged prior sexual conduct. We conclude that it does.

¶ 39. There are four primary policy interests furthered by the rape shield statute:

> First, [the rape shield statute] promotes fair trials because it excludes evidence which is generally irrelevant, or if relevant, substantially outweighed by its prejudicial effect. Second, it prevents a defendant from harassing and humiliating the complainant. . . .Third, the statute prevents the trier of fact from being misled or confused by collateral issues and deciding a case on an improper basis. Fourth, it promotes effective law enforcement because victims will more readily report such crimes and testify for the prosecution if they do not fear that their prior sexual conduct will be made public.

*State v. Pulizzano*, 155 Wis. 2d 633, 647, 456 N.W.2d 325 (1990).

¶ 40. The defendant wanted to present evidence that on the day before the defendant's alleged sexual assaults, while Steven D. was napping, Josh C. tried to put his penis in Steven D.'s mouth, and Mark D. attempted to put his buttocks in Steven D.'s face. The defense would have alleged that the boys were told to

---

during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to § 971.31(11):

1. Evidence of the complaining witness's past conduct with the defendant.

2. Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered.

3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

stop by both the defendant and his mother. The defendant also sought to present testimony from the defendant's mother that she caught the boys in the basement quickly pulling their pants up. The defendant would have further claimed that the boys did not refute a statement made in their presence about trying to put their penises in Steven D.'s mouth and generally acting inappropriately. (R. at 37:6.)

¶ 41. The defendant argued that this evidence was needed to substantiate his claim that the victims engaged in acts virtually identical to those for which he was charged, thus demonstrating a motive to fabricate and bias by the victims. The circuit court ruled the evidence inadmissible after taking into account the six-part test in *State v. Herndon*, 145 Wis. 2d 91, 122–23, 426 N.W.2d 347 (Ct. App. 1988), overruled on other grounds, *State v. Pulizzano*, 155 Wis. 2d 633, 644, 456 N.W.2d 325 (1990), which was later modified to a five-part test by this court in *Pulizzano*.[10]

¶ 42. The right to confrontation, cross-examination, and compulsory process is vital to insuring an objective and fair trial. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). The confrontation clause gives defendants the right to "effective cross-examination" of witnesses presenting adverse testimony. *Davis v. Alaska*, 415 U.S. 308, 318 (1974). The compulsory process clause gives defendants the right to present favorable testimony. *Chambers*, 410 U.S. at 302. However, defendants cannot present irrelevant evidence.

---

[10] The defendant argued that the circuit court's application of the sixth part of the *Herndon* test amounted to abuse of discretion; however, because the defendant's evidence did not meet all five of the *Pulizzano* factors, his rights were not violated despite consideration of the sixth factor.

*State v. Robinson,* 146 Wis. 2d 315, 332, 431 N.W.2d 165 (1988).

¶ 43. "A circuit court has broad discretion in determining the relevance and admissibility of proferred evidence." *State v. Oberlander,* 149 Wis. 2d 132, 140, 438 N.W.2d 580 (1989) (citing *State v. Brecht,* 143 Wis. 2d 297, 320, 421 N.W.2d 96 (1988)). In determining the admissibility of evidence, the standard of review is whether the circuit court erroneously exercised its discretion. *Pharr,* 115 Wis. 2d at 342. "The question on appeal is not whether this court, ruling initially on the admissibility of the evidence, would have permitted it to come in, but whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record." *Wollman,* 86 Wis. 2d at 464. An erroneous exercise of discretion will not be found if there is a reasonable basis for a circuit court's decision. *Boodry v. Byrne,* 22 Wis. 2d 585, 589, 126 N.W. 503 (1964). However, questions of constitutional significance, such as a defendant's rights to confrontation and compulsory process, may be reviewed without deference to the circuit court. *See Pulizzano,* 155 Wis. 2d at 648.

¶ 44. The rape shield statute impermissibly denies a defendant's rights to confrontation and compulsory process if the evidence the defendant seeks to present satisfies the five-factor test of *Pulizzano. In Interest of Michael R.B.,* 175 Wis. 2d 713, 736, 499 N.W.2d 641 (1993). To satisfy the five-factor test, a defendant must show all of the following through an offer of proof:

1) The prior act clearly occurred.

2) The act closely resembles that in the present case.

3) The prior act is clearly relevant to a material issue.

4) The evidence is necessary to the defendant's case.

5) The probative value outweighs the prejudicial effect.

*Pulizzano*, 155 Wis. 2d at 656. The offer of proof should state an evidentiary hypothesis bolstered by a statement of fact sufficient to justify the conclusion or inference the court is asked to accept. *Milenkovic v. State*, 86 Wis. 2d 272, 284, 272 N.W.2d 320 (Ct. App. 1978). In reviewing the circuit court's evidentiary rulings, this court concentrates on the correctness of the decisions, not the expressed rationale of the circuit court, and it upholds rulings supported by the record. *State v. Horn*, 139 Wis. 2d 473, 490–91, 407 N.W.2d 854 (1987). If the circuit court does not give reasons for its discretion, this court will independently review the record to determine if there is a basis for the circuit court's decision. *State v. Lindh*, 161 Wis. 2d 324, 361 n.14, 468 N.W.2d 168 (1991) (citing *Pharr*, 115 Wis. 2d at 343).

¶ 45. In this case, the circuit court determined that the defendant's offer of proof did not satisfy four of the five *Pulizzano* factors. As to the first factor, the circuit court concluded that the offer of proof was insufficient to show that the prior acts occurred, because it was unclear what the victims would say about the allegations, and the defendant was relying on only the testimony of himself and his mother, who would be biased in the matter.

714

¶ 46. The circuit court found that the second factor was satisfied because the alleged acts were similar to those charged to the defendant. However, the court determined that the third factor, that the prior act is clearly relevant to a material issue, was not satisfied, reasoning that the fact that someone engaged in a sexual act at some earlier time, even within four hours, did not relate to any material issue, such as intent.

¶ 47. As to the fourth factor, the circuit court concluded that the evidence was not necessary to the defense, reasoning that there was already evidence that the boys and their stepfather had a strong bias against homosexuals. Also, regarding the issue of identity, since there were other people in the dark basement, the evidence was not needed to show that someone other than the defendant may have touched the victims.

¶ 48. Finally, the circuit court decided that the evidence would be prejudicial to the state because it was raised for the first time during trial, thus not giving the prosecution a chance to investigate the allegations.

¶ 49. The circuit court appropriately exercised its evidentiary discretion in accordance with accepted legal standards and the facts of the record. Therefore, we conclude that the rape shield statute did not deprive the defendant of his rights to confrontation and compulsory process, because he failed to satisfy all of the *Pulizzano* criteria.

## IV.

¶ 50. We affirm the decision of the circuit court. We find that the evidence of Hammer's other sexual conduct is admissible under the three-step test set

forth in *State v. Sullivan*, 216 Wis. 2d 768, 772–73, 576 N.W.2d 30 (1998). The evidence of Hammer's past sexual conduct is admissible to prove mode or method of operation, and thus establish identity in accord with the exceptions in Wis. Stat. § (Rule) 904.04(2). The evidence is relevant under Wis. Stat. § (Rule) 904.01, and its probative value is not substantially outweighed by danger of unfair prejudice, confusion, misleading the jury, or undue delay considerations under Wis. Stat. § (Rule) 904.03.

¶ 51. We also conclude that the evidence of the victims' prior sexual conduct was properly kept from the jury in accordance with the rape shield statute. The state's interest in applying the rape shield statute outweighed the defendant's Sixth Amendment right to confront witnesses and compel testimony. As such, the circuit court's admission of Hammer's prior sexual conduct, while excluding the victims' prior sexual conduct, did not violate Hammer's right to a fair trial.

*By the Court.*—The judgment of the circuit court is affirmed.

¶ 52. ANN WALSH BRADLEY, J. *(dissenting).* The majority's application of the greater latitude rule to establish proof of Hammer's identity is inconsistent with the law that proof of identity through other acts evidence requires a more stringent standard of admissibility. The majority fails even to acknowledge the heightened standard for proof of identity. Instead, it ignores the analytical inconsistency of raising the standard while at the same time lowering the standard, predictably concluding that the other acts evidence is admissible.

¶ 53. Originally, the application of the greater latitude rule in child sexual assault cases was narrowly tailored to admit evidence of prior sexual acts directly involving the alleged victim. *See Proper v. State*, 85 Wis. 615, 629, 55 N.W. 1035 (1893). Here, the majority recognizes that the greater latitude rule "facilitates the admissibility of the other acts evidence under the exceptions set forth in § (Rule) 904.04(2)." Majority op. at ¶ 23. Yet the majority then extends the rule to "the entire analysis of whether evidence of a defendant's other crimes was properly admitted at trial" in a child sexual assault case. *Id.* (citing *State v. Davidson*, 2000 WI 91, ¶ 51, 236 Wis. 2d 537, 613 N.W.2d 606).

¶ 54. The majority's application of the greater latitude rule in admitting Hammer's prior act to prove his identity conflicts with an elevated standard for proof of identity that has been recognized in Wisconsin law. *See, e.g., State v. Anderson*, 230 Wis. 2d 121, 131 n.6, 600 N.W.2d 913 (Ct. App. 1999). Other acts evidence may be admitted to show identity if this evidence has "such a concurrence of common features and so many points of similarity with the crime charged that it 'can reasonably be said that the other acts and the present act constitute the imprint of the defendant.' " *State v. Gray*, 225 Wis. 2d 39, 51, 590 N.W.2d 918 (1999) (quotations omitted). *See also State v. Fishnick*, 127 Wis. 2d 247, 263–64, 378 N.W.2d 272 (1985).

¶ 55. Such an imprint was present in *Hough v. State*, 70 Wis. 2d 807, 235 N.W.2d 534 (1975). In that case, the prosecution offered other acts evidence in the form of a threat made by the defendant to a fifteen-year-old girl stating that he planned to rape her because she was a virgin. During the commission of the sexual assault for which the defendant was on trial, he had terminated his act of sexual intercourse with the

victim because at that point he believed she was not a virgin. This court held that the prior threat was admissible other acts evidence under Wis. Stat. § (Rule) 904.04(2) to show identity because the predilection for intercourse with virgins represented a "particular quirk in the assailant's makeup." *Id.* at 814.

¶ 56. Likewise, in *Sanford v. State*, 76 Wis. 2d 72, 250 N.W.2d 348 (1977), evidence of a prior sexual assault was held admissible to prove the defendant's identity because of the existence of seven "[s]triking similarities" between the offense charged and the prior act. These similarities included that in both assaults the defendant had the victim lie on a jacket on a garage floor, that he initially approached each victim at a bus stop, and that he threatened each victim with the use of a gun. *Id.* at 80–81. This court determined that the similarities between the prior act and the charged offense were of "a like or unique nature." *Id.* at 81.

¶ 57. Here the majority sets forth the similarities between Hammer's prior act and the charged offense to include: 1) that Hammer awakened the victims at night by improperly touching them; 2) that the victims were of the same sex; 3) that they were between the ages of fourteen and twenty; 4) that both incidents occurred at a home; and 5) that Hammer knew the victims. Without acknowledging the higher standard of admissibility to prove identity, and by applying instead the greater latitude rule, the majority concludes that these similarities suffice for the admission of Hammer's prior act.

¶ 58. The facts surrounding the prior act in this case are unfortunately all too common in sexual assaults and do not demonstrate Hammer's unique imprint as required by the higher standard of admissibility based on identity. Whether it be the time of night,

place of private residence, or circumstance involving victims of the same sex, age range, and familiarity with Hammer, these facts fail to reveal a nearness that would constitute a particular "quirk" or imprint of the defendant to prove his identity.

¶ 59. In each of the three steps of its other acts analysis, the majority explains that it is applying the greater latitude rule, citing to *Davidson*, 2000 WI 91, ¶ 51. Engaging in such a nuanced approach to the greater latitude rule seems unnecessary because the bottom line is that, whether for one step or for all three, the majority will admit other acts evidence in child sexual assault cases. To apply the rule separately to each step simply lengthens the majority's discussion to arrive at the predictable conclusion that prior acts have been admitted properly under Wis. Stat. § (Rule) 904.04(2).

¶ 60. There are times when the admission of other acts evidence is appropriate. However, these acts must be specific as to the particular purpose for which they are offered, and the proponent of such evidence must clearly articulate the purposes for which it is intended. In delivering its cautionary instruction, a court should be careful to advise the jury of the specific statutory purpose for which the other act has been introduced rather than reciting the laundry list of purposes set forth in Wis. Stat. § (Rule) 904.04(2).

¶ 61. The dangers underlying the admission of other acts evidence are well established. In *Whitty v. State*, 34 Wis. 2d 278, 292, 149 N.W.2d 557 (1967), this court noted the dangers that result from the inadequate balancing of the probative value of prior acts evidence against the harm to the defendant, including: 1) the overwhelming tendency to presume the defendant guilty because he is a person likely to commit such

acts; 2) the tendency to condemn not because of the defendant's actual guilt but because he may have escaped punishment for previous acts; 3) the injustice in attacking a person who is not prepared to show that the evidence used for attack is fabricated; and 4) the confusion of issues that may result from the introduction of other crimes. *Id.*

¶ 62. The majority's result underscores that it seemingly matters little whether the greater latitude rule applies to the first prong, second prong, third prong, or to all three prongs of the other acts analysis. It matters little whether it is a rule of greater latitude or higher altitude or enhanced longitude, or any other rule. Even when the rule is inconsistent with another evidentiary principle or requirement, the prior act is allowed into evidence. The application of the greater latitude rule in this case seemingly nullifies a more stringent standard for proof of identity. Accordingly, I dissent.

¶ 63. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON and JUSTICE WILLIAM A. BABLITCH join this dissent.