COURT OF APPEALS
DECISION
DATED AND FILED

November 18, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1780-CR**

Cir. Ct. No. **2018CF968**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

FRANK P. SMOGOLESKI,

DEFENDANT-RESPONDENT.

APPEAL from orders of the circuit court for Waukesha County: LAURA F. LAU, Judge. *Reversed and cause remanded for further proceedings*.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶1    REILLY, P.J. Frank P. Smogoleski was charged with second-degree sexual assault of a person under the influence of an intoxicant.[1] At Smogoleski's preliminary examination, Jon[2] testified that he saw a naked Smogoleski on top of an intoxicated, asleep seventeen-year-old female whose pants and underwear were around her ankles. Jon passed away a month later. The State appeals, pursuant to WIS. STAT. § 974.05(1)(d)2., from two pretrial orders of the circuit court denying the State's motions to admit Jon's preliminary examination testimony at trial and to admit other-acts evidence. As we conclude that Smogoleski's Sixth Amendment Confrontation Clause rights will not be violated by admitting Jon's preliminary examination testimony at trial and we agree with the State that the circuit court erred in denying the State's other-acts motion, we reverse and remand for further proceedings consistent with this decision.

*Facts*

¶2    Jon testified under oath at the preliminary examination that he hosted an underage drinking party at his home on June 23, 2018. Seventeen-year-old Emily[3] and seventeen-year-old Smogoleski were among the guests. Jon had known Smogoleski since preschool and identified him in court.

¶3    During the party, Emily became highly intoxicated, and Jon had her lie down, fully clothed, in his sister's bed to sleep. A short time later, Jon was

---

[1] WIS. STAT. § 940.225(2)(cm) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version.

[2] A pseudonym.

[3] A pseudonym.

informed by another party guest that Smogoleski had gone into the bedroom where Emily was in bed. Jon went to the bedroom and found Smogoleski "on top of" Emily. Emily's shirt was off, and her pants and underwear were at her ankles. Smogoleski's pants and underwear were also off, and he was on top of Emily. Smogoleski's penis was "[l]ike touching her vagina." Jon grabbed Smogoleski around the stomach and pulled him off Emily. Emily remained asleep throughout the assault.

¶4 At the preliminary examination, defense counsel extensively cross-examined Jon regarding his recollections of that evening. Counsel also cross-examined Detective Craig Mayer, of the Elm Grove Police Department, regarding Jon's prior statements that he made to police regarding the crime. The circuit court ultimately bound Smogoleski over for trial. Jon passed away a month after the hearing.

¶5 The State moved the circuit court to admit Jon's sworn testimony from the preliminary examination at Smogoleski's upcoming jury trial. Smogoleski objected on Sixth Amendment Confrontation Clause grounds, and the circuit court agreed, denying the motion. The State also filed an other-acts motion, seeking to admit evidence of a prior incident of sexual assault involving Smogoleski and a different sixteen-year-old female. Again, Smogoleski objected, and the court denied the motion, concluding that "the probative value would not substantially outweigh the … danger of prejudicial effect to" Smogoleski. The State appeals.

*Standard of Review*

¶6 The Sixth Amendment to the United States Constitution and our Wisconsin Constitution guarantee a criminal defendant the right to confront

witnesses who testify against him or her at trial. U.S. CONST. amend. VI; WIS. CONST. art. 1, § 7; *see also* ***State v. Jensen***, 2007 WI 26, ¶13, 299 Wis. 2d 267, 727 N.W.2d 518 ("We generally apply United States Supreme Court precedents when interpreting these clauses."). Whether admission of a declarant's statements at a preliminary examination violates a defendant's Sixth Amendment right to confrontation is a question of constitutional law that we review de novo. ***State v. Manuel***, 2005 WI 75, ¶25, 281 Wis. 2d 554, 697 N.W.2d 811; *see also* ***State v. Mattox***, 2017 WI 9, ¶19, 373 Wis. 2d 122, 890 N.W.2d 256.

¶7 We review a circuit court's decision to admit or exclude other-acts evidence like any evidentiary ruling: for an erroneous exercise of discretion. ***State v. Sullivan***, 216 Wis. 2d 768, 780, 576 N.W.2d 30 (1998). "An appellate court will sustain an evidentiary ruling if it finds that the circuit court examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach." ***Id.*** at 780-81.

*Confrontation Clause*

¶8 The Confrontation Clause bars the admission of testimonial statements of a witness who does not appear at trial unless the witness was unavailable and the defendant had "a prior opportunity for cross-examination." ***Crawford v. Washington***, 541 U.S. 36, 53-54, 59 (2004); ***State v. Reinwand***, 2019 WI 25, ¶22, 385 Wis. 2d 700, 924 N.W.2d 184. Neither party disputes that Jon's statements are testimonial, *see **Crawford***, 541 U.S. at 68 (explaining that the term "testimonial" "applies at a minimum to prior testimony at a preliminary hearing"), and that Jon will be unavailable at trial. The issue, then, is whether Smogoleski had a prior opportunity to cross-examine Jon.

¶9　*Crawford* defines "a prior opportunity for cross-examination" as an "*adequate opportunity* to confront the witness" which is further defined as the right to see the witness "face to face" and the right to subject the witness to the "ordeal of cross-examination." *Crawford*, 541 U.S. at 57 (emphasis added; citation omitted). Smogoleski argues that the circuit court correctly ruled that Jon's preliminary examination testimony should be excluded as "counsel was significantly limited in the cross-examination of Jon" because the scope of cross-examination at a preliminary examination "is limited to issues of plausibility, not credibility," and the circuit court accordingly limited Jon's testimony. We disagree.

¶10　The purpose of a preliminary examination is to determine if there is probable cause to believe a felony has been committed by the defendant. WIS. STAT. § 970.03(1). All witnesses are sworn and the testimony is preserved, and witnesses are subject to being sequestered. Sec. 970.03(5), (6). A defendant has the right to both cross-examine and call witnesses at a preliminary examination. Sec. 970.03(5). The scope of cross-examination, however, is limited to investigating plausibility, not credibility or general trustworthiness. *State v. Stuart*, 2005 WI 47, ¶¶30-31, 279 Wis. 2d 659, 695 N.W.2d 259. When cross-examination is restricted to issues of plausibility, "a Confrontation Clause problem arises." *Id.*, ¶31.

¶11　We conclude that Smogoleski's cross-examination of Jon was not so restricted, and he had an "adequate opportunity" to cross-examine Jon at the preliminary examination. *Crawford*, 541 U.S. at 57. As an initial matter, we note that Smogoleski originally waived his right to a preliminary examination. After receiving discovery, however, defense counsel and the State stipulated that a preliminary examination was warranted. As a result, the circuit court, rather than

5

a court commissioner, presided over Smogoleski's preliminary examination. This also meant that prior to the preliminary examination, defense counsel had all the police reports, including audio recordings, which allowed counsel to engage in a much more thorough cross-examination.

¶12　The State had to show at the preliminary examination that there was probable cause that (1) Smogoleski had sexual contact[4] with Emily; (2) Emily was under the influence of an intoxicant at the time of the sexual contact; (3) Emily was under the influence of an intoxicant to a degree which rendered her incapable of giving consent[5]; (4) Smogoleski had actual knowledge that Emily was incapable of giving consent; and (5) Smogoleski had the purpose to have sexual contact while Emily was incapable of giving consent. WIS JI—CRIMINAL 1212. Smogoleski had the opportunity to, and did, cross-examine Jon on all of these elements.

¶13　Smogoleski's counsel was given great leeway by the State and the circuit court to cross-examine Jon at the preliminary examination. To give some perspective, the State's questions on direct examination consist of fourteen pages of transcript; defense counsel's cross-examination consists of twenty-six pages. Defense counsel asked Jon no less than thirty-two questions relating to what,

---

[4] "Sexual contact" is defined as an "intentional touching of [an intimate part] of [a victim] (by the defendant)." WIS JI—CRIMINAL 1200A. The touching may be direct or through the clothing. *Id.* "The touching may be done by any body part or by any object, but it must be an intentional touching." *Id.* "Intimate parts" is defined to include "the breast, buttock, anus, groin, scrotum, penis, vagina, or pubic mound of a human being." WIS. STAT. § 939.22(19). In *State v. Morse*, 126 Wis. 2d 1, 2-6, 374 N.W.2d 388 (Ct. App. 1985), we defined "intimate part" to include the "vaginal area."

[5] This element requires the State to show that Emily "was incapable of giving freely given agreement to engage in sexual … (contact)." WIS JI—CRIMINAL 1212.

where, and how the genital parts of Smogoleski and Emily were touching. Defense counsel asked no less than thirty-nine questions about Jon's statements to police (Jon had two interviews with police) and discrepancies in the police reports versus his preliminary examination testimony. Defense counsel asked no less than nine questions relating to Jon's ability to see in the dark bedroom; no less than sixteen questions relating to Emily's level or degree of intoxication; no less than four questions about statements that Smogoleski made to Jon about the fact that he and Emily were going to "fuck"/"have intercourse"; questioned Jon as to his level of intoxication; questioned Jon as to whether the person who told Jon that Smogoleski went into the bedroom with Emily was intoxicated; questioned Jon as to his party being "illegal"; and questioned Jon as to his conversations with Emily about Emily being "raped."

¶14 Ten objections occurred during defense counsel's cross-examination of Jon. The State objected seven times on grounds of "asked and answered," which the court sustained five objections and overruled two. The State lodged three objections on grounds of relevance—one in conjunction with an asked and answered objection—which were sustained. At one point, the court stopped defense counsel without an objection lodged by the State on the grounds that counsel was "argumentative" to the point of trying to "intimidate" Jon. The court also stopped defense counsel when counsel tried questioning Jon about a legal motion that was filed with the court as to the meaning of "sexual contact." The court did not address an objection on hearsay grounds, as defense counsel rephrased his question. Finally, the court did not rule on an objection on the grounds of "commentary," as defense counsel moved to strike his own question and proceeded with a different question.

¶15 The three objections on relevance do raise the question of whether Smogoleski had an "adequate opportunity" to cross-examine Jon. *See Crawford*, 541 U.S. at 57. The first relevance objection was raised when defense counsel asked Jon if he had any "instrument or any other items" to determine whether Emily was intoxicated. The State argued that because "plausibility" is the standard of a preliminary examination, the question as to whether Jon had an "instrument" to measure Emily's level of intoxication was irrelevant. While the court sustained the State's objection, Smogoleski had more than an adequate opportunity to cross-examine Jon, as the court allowed Smogoleski to explore with Jon what he saw Emily consume and what his observations were of her condition. The court also sustained the State's objection to Smogoleski's question: "[A]s you sit here today there is no way for you to testify under oath that she was intoxicated. Can you?" But it did allow the next question (not objected to by the State): "Based on your observations of what you saw [Emily] drink, in your opinion was she intoxicated in that bedroom?" Jon answered, "Yes." The State also objected to Smogoleski's question: "[Emily], after this was over, didn't come to you and say words to the effect he had intercourse with me. Did that happen?" This objection was sustained, but counsel went on to ask at least two other questions, without objection, regarding conversations Jon had with Emily after the alleged assault. Smogoleski had more than adequate opportunity to cross-examine Jon on these issues.

¶16 In sum, defense counsel zealously represented Smogoleski in his cross-examination of Jon. Smogoleski was given great leeway to vigorously question Jon not only about what Jon saw but also Jon's credibility in making the observations that he did. Jon was repeatedly questioned by defense counsel about his ability to see what he claimed he saw; repeatedly questioned about

discrepancies between what Jon told the police and what he testified to on direct examination at the preliminary examination; was attacked on his opinion and observations of Emily's level of intoxication; questioned as to his "illegal" party; and questioned about "rape" versus Smogoleski's statements that he and Emily "were going to fuck." Smogoleski was not rigidly stopped at plausibility testimony.

*Other-Acts Motion*

¶17 The State also appealed the court's denial of an other-acts evidence motion. The State sought to admit evidence of a similar allegation from a sixteen-year-old girl who may have been sexually assaulted by Smogoleski. The girl stated that she had gone to a house party, became intoxicated, and passed out on the couch. She claimed that she woke up to find her leggings removed and Smogoleski, who was not wearing pants, performing cunnilingus on her. Smogoleski allegedly produced a condom and asked if the girl "wanted to have sex," which she refused. She initially did not report the incident to police, which she claims occurred in March 2017, but "when she learned what happened to [Emily], she decided that she was willing to report this incident."

¶18 Courts apply a three-step analysis to determine the admissibility of other-acts evidence. *Sullivan*, 216 Wis. 2d at 771. Other-acts evidence is properly admitted if: (1) it is offered for a permissible purpose under WIS. STAT. § 904.04(2); (2) it is relevant under the two relevancy requirements found in WIS. STAT. § 904.01; and (3) its probative value is not substantially outweighed by the risk of unfair prejudice under WIS. STAT. § 904.03. *Sullivan*, 216 Wis. 2d at 772-73. "Because the statute provides for exclusion only if the evidence's probative value is *substantially outweighed* by the danger of unfair prejudice, [t]he bias is []

squarely on the side of admissibility." *State v. Dorsey*, 2018 WI 10, ¶54, 379 Wis. 2d 386, 906 N.W.2d 158 (alterations in original; citation omitted); *see also State v. Linton*, 2010 WI App 129, ¶26, 329 Wis. 2d 687, 791 N.W.2d 222 ("The balancing test of the probative value and danger of unfair prejudice favors admissibility."). "If the probative value is close to or equal to its unfair prejudicial effect, the evidence must be admitted." *Dorsey*, 379 Wis. 2d 386, ¶54 (citation omitted). Further, "[i]n a sex crime case, the admissibility of other acts evidence must be viewed in light of the greater latitude rule."[6] *State v. Hammer*, 2000 WI 92, ¶23, 236 Wis. 2d 686, 613 N.W.2d 629; *see also* § 904.04(2)(b). The greater latitude rule applies to each prong of the *Sullivan* analysis. *Dorsey*, 379 Wis. 2d 386, ¶33.

¶19    The circuit court denied the State's other-acts motion. The court's oral decision only briefly mentions the "permissible purpose" and "relevancy" prongs of the *Sullivan* test,[7] suggesting that the court concluded those elements had been satisfied and its only concern, as Smogoleski agrees, was the third prong. The court first questioned whether the greater latitude rule applied to the case

---

[6] As our supreme court explained in *State v. Dorsey*, 2018 WI 10, ¶32, 379 Wis. 2d 386, 906 N.W.2d 158 (citations omitted):

> Under the common law, the greater latitude rule allows for more liberal admission of other-acts evidence. It has traditionally been applied in cases of sexual abuse, particularly those involving children. Its application in this context dates back to 1893, and it has been so-applied in hundreds of cases since. *See Proper v. State*, 85 Wis. 615, 630, 55 N.W. 1035 (1893) ("A greater latitude of proof as to other like occurrences is allowed in cases of sexual crimes.").

[7] The circuit court cited *State v. Gray*, 225 Wis. 2d 39, 59, 590 N.W.2d 918 (1999) (citation omitted), which explained that "[i]t is not necessary that prior-crime evidence be in the form of a conviction; evidence of the incident, crime or occurrence is sufficient" and, accordingly, "other acts evidence may consist of uncharged offenses."

"when it dealt with two people under the age of 18 and whether you then, in fact, would continue to use the greater latitude rule," but then did indicate that it "still looked at how the greater latitude rule would affect *Sullivan*." The court ultimately concluded that, "[a]fter reviewing all of the information," it had "extreme concern that the probative value would not substantially outweigh the prejudice, the danger of prejudicial effect to [Smogoleski]."[8]

¶20 On appeal, Smogoleski does not argue that the first two prongs of the *Sullivan* test have not been satisfied, arguing only that we are to give the circuit court "great deference" and that the court "did exactly what the law requires." Accordingly, we agree that the first two prongs of the *Sullivan* analysis have been satisfied.

¶21 On the third prong, we agree with the State that the circuit court applied the wrong standard of law and erroneously exercised its discretion. First, the greater latitude rule is clearly applicable under the circumstances, *see* WIS. STAT. §§ 904.04(2)(b)1., 939.615(1)(b)1., and any implication that the circuit court did not fully apply the rule to the third prong of the *Sullivan* analysis is absolute error.

¶22 The circuit court also misapplied the third prong of the *Sullivan* analysis. The court, in its recitation of the rule, reversed the language of the third prong; it is not a requirement that the probative value outweigh the risk of unfair prejudice. Instead, the unfair prejudice must outweigh the probative value: The

---

[8] The circuit court also stated the third prong of the *Sullivan* analysis as whether "the probative value of the other acts evidence substantially outweighs the danger of prejudice or confusion of the issues, doesn't mislead the jury, cause undue delay, waste time or result in an unnecessary presentation of evidence."

question is whether "the probative value of the other acts evidence [is] *substantially outweighed by* the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." *Sullivan*, 216 Wis. 2d at 772-73 (emphasis added). "The term 'substantially' indicates that *if the probative value of the evidence is close or equal to its unfair prejudicial effect, the evidence must be admitted*." *State v. Payano*, 2009 WI 86, ¶80, 320 Wis. 2d 348, 768 N.W.2d 832 (citation omitted). Further, we note that the court only referenced the "danger of prejudice" or the "danger of prejudicial effect" in its oral decision. The appropriate consideration is whether the evidence is *unfairly* prejudicial. As our supreme court explained, "[t]he determination of unfair prejudice must be made with great care because '[n]early all evidence operates to the prejudice of the party against whom it is offered…. The test is whether the resulting prejudice of relevant evidence is *fair or unfair*." *Id.*, ¶88 (second alteration in original; citation omitted). To the extent the court only weighed the danger of prejudice rather than unfair prejudice, the circuit court erred.

¶23     We conclude that, while the other-acts evidence is clearly prejudicial to Smogoleski, he has not met his burden to show that the danger of unfair prejudice substantially outweighs the probative value of the evidence. *See id.*, ¶80 & n.18 (explaining that it is the opponent of the evidence who must establish the prejudice prong). "Essentially, probative value reflects the evidence's degree of relevance. Evidence that is highly relevant has great probative value, whereas evidence that is only slightly relevant has low probative value." *Id.*, ¶81. "The measure of probative value in assessing relevance is the similarity between the charged offense and the other act." *Hammer*, 236 Wis. 2d 686, ¶31 (quoting *State v. Gray*, 225 Wis. 2d 39, 58, 590 N.W.2d 918 (1999)). "Similarity is

demonstrated by showing the 'nearness of time, place, and circumstance' between the other act and the alleged crime.'" ***Id.*** (citation omitted). Here, the other-acts evidence is highly relevant to this case, as it provides context, intent, and motive and specifically addresses the questions of consent and witness credibility. Therefore, the evidence is highly probative based on the similarities between the allegations: Smogoleski engaging in sexual acts with an unconscious teenager who had been drinking alcohol at a house party.

¶24 Balancing the probative value against the unfair prejudicial effect, we note that "[p]rejudice is not based on simple harm to the opposing party's case, but rather 'whether the evidence tends to influence the outcome of the case by improper means.'" ***State v. Hurley***, 2015 WI 35, ¶87, 361 Wis. 2d 529, 861 N.W.2d 174 (quoting ***Payano***, 320 Wis. 2d 348, ¶87). Unfair prejudice results when the other-acts evidence "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case." ***Id.***, ¶88 (citation omitted). We agree with the State's assessment that the other-acts evidence is "not any more horrifying than the charge against Smogoleski" such that it would inflame the "jury's sympathies" or "its sense of horror." Accordingly, we cannot conclude that the highly relevant and probative nature of other-acts evidence is "*substantially outweighed by* the danger of *unfair* prejudice" under the circumstances. *See **Sullivan***, 216 Wis. 2d at 772-73 (emphasis added). Further, the circuit court may provide limiting instructions to "substantially mitigate any unfair prejudicial effect." *See **Hurley***, 361 Wis. 2d 529, ¶89. Given the application of the greater latitude rule in this case, we conclude that the State's other-acts evidence satisfies the ***Sullivan*** test and is admissible at Smogoleski's trial.

13

*Conclusion*

¶25    For the forgoing reasons, we conclude that the circuit court erred in denying the State's pretrial motions to admit Jon's preliminary examination testimony at trial and to admit other-acts evidence. The circuit court applied the incorrect standard of law in denying the State's other-acts motion, and as Smogoleski had more than an "adequate opportunity" to cross-examine Jon and the preliminary examination was not restricted to investigating plausibility, we reverse and remand for proceedings consistent with this decision.

        *By the Court.*—Orders reversed and cause remanded for further proceedings.

        Not recommended for publication in the official reports.